PECORARO v DEPARTMENT OF CORRECTIONS

Docket No. 44708. Submitted May 13, 1980, at Marquette.—Decided
October 22, 1980. Leave to appeal applied for.

Robert C. Pecoraro and David J. Purnell filed a complaint in
Marquette Circuit Court against the Michigan Department of
Corrections seeking injunctive relief and damages and request-
ing that the state prison in Marquette be required to conform
to the Michigan Housing Act of 1917. In addition, the plaintiffs
sought a declaration that the Marquette municipal fire code
was applicable to the prison. The Department of Corrections
filed a motion for accelerated judgment, or alternatively, for
summary judgment. Edward A. Quinnell, J., denied the motion
and delivered an opinion indicating that both the state housing
act and the Marquette municipal fire code applied to the
prison.

A motion for rehearing was made by the Department of
Corrections. This motion was granted. Following the rehearing,
the judge reaffirmed his holding that the housing act applied to
the prison, while determining that the municipal fire code did
not.

An order was thereupon entered granting in part and deny-
ing in part the defendant's motion for summary judgment.

Plaintiffs moved for a rehearing on the fire code issue which
was denied.

Plaintiffs appealed by leave granted. The defendant there-
upon filed a cross-appeal, contesting the trial court's ruling that
the state housing act is applicable to the state prisons. *Held:*

1. The trial court erred in deciding that the housing act was
applicable to the prison while holding that the municipal fire
code was not. Marquette prison is either subject to both or
neither since the municipal fire code of a community where a
building subject to the state housing act is located is incorpo-
rated into the state housing act by reference.

2. Standing by itself, the state housing code applies to state

REFERENCES FOR POINTS IN HEADNOTES
[1] 13 Am Jur 2d, Buildings § 18 *et seq.*
[2, 4] 60 Am Jur 2d, Penal and Correctional Institutions § 3 *et seq.*
[3] 73 Am Jur 2d, Statutes §§ 56, 169.

prisons. However, the statute establishing the State Department of Corrections evidences a legislative intent to vest the department with complete jurisdiction over the state prisons and to nullify the applicability of any contradictory legislation. Furthermore, it is presumed that the Legislature has knowledge of existing laws when it enacts a statute. Since the statute creating the Department of Corrections was enacted after the state housing code, and in the absence of any evidence to the contrary, the Legislature must have intended to relieve the Department of Corrections from the obligation of maintaining the state penal institutions in compliance with the housing code.

Affirmed in part, reversed in part.

1. STATUTES — MICHIGAN HOUSING ACT — FIRE CODES — MUNICIPAL CORPORATIONS.

The municipal fire code of a community where a building subject to the state housing act is located is incorporated into the state housing act by reference (MCL 125.539[a]; MSA 5.2891[19][a]).

2. PRISONS AND PRISONERS — STATE HOUSING CODE — DEPARTMENT OF CORRECTIONS — STATUTES.

Standing by itself, the State of Michigan housing code applies to state prisons, but the act creating the Department of Corrections evidences a legislative intent to vest the department with complete jurisdiction over the state prisons and to nullify the applicability of any contradictory legislation (MCL 125.401 et seq.; MSA 5.2771 et seq.; MCL 791.202; MSA 28.2272).

3. STATUTES — LEGISLATURE — KNOWLEDGE OF EXISTING LAWS.

It is presumed that the Legislature has knowledge of existing laws when it enacts a statute.

4. PRISONS AND PRISONERS — PUBLIC POLICY — HOUSING LAWS — LEGISLATURE.

It might be sound public policy to require the state penal institutions to be in compliance with state housing laws, but that is a determination that must be made by the Legislature.

*Peter H. Shumar,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Keith D. Roberts,* Assistant Attorney General, for defendant.

Before: MacKenzie, P.J., and Bronson and Allen, JJ.

Bronson, J. This case comes to us on a settled statement of facts. In May, 1978, plaintiffs filed a complaint for injunctive relief and damages in the Marquette County Circuit Court, requesting that the state prison in Marquette be required to conform to the Michigan Housing Act of 1917.[1] At this same time, plaintiffs also sought a declaration that the Marquette municipal fire code was applicable to the prison.

On or about July 3, 1978, the Department of Corrections filed a motion for accelerated judgment, or alternatively, for summary judgment. On July 21, 1978, the circuit court denied the motion in its entirety. At that time, the court delivered an opinion from the bench to the effect that both the state housing act and the municipal fire code applied to the prison.

A motion for rehearing was filed on August 31, 1978. The motion was granted and the matter reheard on January 12, 1979. Following the rehearing, the circuit court reaffirmed its holding that the state housing act applied to the prison, while determining that the municipal fire code did not. An order granting in part and denying in part defendant's motion for summary judgment was entered on January 24, 1979.

Plaintiffs then moved for a rehearing on the basis that the municipal fire code was made applicable to the Marquette state prison through the

---

[1] MCL 125.401 *et seq.;* MSA 5.2771 *et seq.* The Housing Act of 1917 is to be replaced by the housing provisions of article 12 of the Public Health Code, MCL 333.12201 *et seq.;* MSA 14.15(12201) *et seq.* However, pursuant to MCL 333.25103; MSA 14.15(25103), the housing act is not repealed until "all or the principal part of the rules promulgated" under MCL 333.12211; MSA 14.15(12211), take effect. These rules have not yet been promulgated.

housing act. The motion was heard and denied on April 16, 1979. The denial of the motion was premised upon "a controlling question of law as to which there is substantial grounds for difference of opinion and immediate appellate court resolution of said issue may materially advance the ultimate termination of the litigation".

Plaintiffs were granted leave to file a delayed appeal on August 20, 1979. Thereafter, on or about September 5, 1979, plaintiffs filed a claim of appeal. On September 19, 1979, defendant filed a cross-appeal, contesting the validity of the trial court's determination that the housing act is applicable to the state prisons.

In our opinion, the learned trial court erred in deciding that the housing act was applicable to the prison, while holding that the municipal fire code was not. Marquette prison is either subject to both or neither. MCL 125.539(a); MSA 5.2891(19)(a) incorporates into the state housing act by reference the municipal fire code of the community where a building subject to the act is located. *Cf. DeGaynor v Dickinson County Memorial Hospital Board of Trustees,* 363 Mich 428, 432-433; 109 NW2d 777 (1961).

Essentially, resolution of this case turns on the proper construction to be given conflicting pieces of legislation. MCL 125.402(3); MSA 5.2772(3) provides in relevant part:

"Multiple dwellings of class b are dwellings which are occupied, as a rule transiently, as the more or less temporary abiding place of individuals who are lodged, with or without meals, and in which as a rule the rooms are occupied singly and without any attempt to provide therein or therewith cooking or kitchen accommodations for the individual occupants. *This class includes* hotels, lodging houses, boarding houses, fur-

nished room houses, club houses, convents, asylums, hospitals, *jails and all other dwellings similarly occupied, whether specifically enumerated herein or not.*" (Emphasis added.)

Although this provision does not explicitly include prisons, the inclusion of "jails and all other dwellings similarly occupied" within its ambit leads us to the conclusion that, standing by itself, the housing code applies to state prisons. This conclusion is dictated by the rules of statutory construction, particularly the rule of *ejusdem generis*. See, *People v Smith,* 393 Mich 432, 436; 225 NW2d 165 (1975).

Our analysis cannot end here, however. We must also consider the effect of legislation establishing the State Department of Corrections.[2] MCL 791.202; MSA 28.2272 provides as is pertinent:

"The commission shall constitute the responsible authority for the administration of the penal institutions, prison industries, parole and probation of the state, subject to the limitations hereinafter set forth. The commission shall determine *all matters relating to the unified development of the penal institutions,* prison industries, parole and probation of the state and shall coordinate and adjust the agencies and penal institutions within its jurisdiction so that each shall form an integral part of a general system."[3] (Emphasis supplied.)

Furthermore, the Legislature expressly provided that:

"Subject to constitutional powers vested in the executive and judicial departments of the state, the department *shall have exclusive jurisdiction* over the follow-

[2] MCL 791.201 *et seq.;* MSA 28.2271 *et seq.*

[3] This language is currently embodied in MCL 791.202(1); MSA 28.2272(1). MCL 791.202; MSA 28.2272 was amended effective September 28, 1978. This amendment in no manner affects our analysis.

ing: * * * (c) penal institutions * * *." MCL 791.204; MSA 28.2274. (Emphasis added.)

Finally, the title to the act establishing the Department of Corrections states in part:

"AN ACT to revise, consolidate and codify the laws relating to * * * the administration of penal institutions * * * to create a state department of corrections, and to prescribe its powers and duties * * * and to *repeal all acts and parts of acts inconsistent with the provisions of this act.*" (Emphasis added.)

The above portions of the act creating the Department of Corrections evidence a legislative intent to vest the department with complete jurisdiction over the state prisons and to nullify the applicability of any contradictory legislation. It is presumed that the Legislature has knowledge of existing laws when it enacts a statute. *People v Buckley,* 302 Mich 12, 21; 4 NW2d 448 (1942), *Skidmore v Czapigo,* 82 Mich App 689, 691; 267 NW2d 150 (1978), *lv den* 403 Mich 810 (1978), *People v Rosecrants,* 88 Mich App 667, 670; 278 NW2d 713 (1979). The housing statute was adopted in 1917, while the legislation creating the Department of Corrections was not enacted until 1953. In the absence of any evidence to the contrary, we must conclude that the Legislature intended to relieve the Department of Corrections from the obligation of maintaining the state penal institutions in compliance with the housing code.

We are not required to rest our decision solely on general rules of statutory construction, however. In *Dearden v Detroit,* 403 Mich 257; 269 NW2d 139 (1978), the Supreme Court construed the same provisions of the Department of Corrections act under consideration here and came to the

conclusion that the department was not subject to municipal zoning ordinances promulgated pursuant to the Zoning Enabling Act.[4] While *Dearden* could be limited to its facts, the sweeping language used in that opinion is clearly applicable to the instant matter.

We also note that the housing provisions of the new Public Health Code do not include the same definition of class b multiple dwellings found in MCL 125.402(3); MSA 5.2772(3). MCL 333.12202(1); MSA 14.15(12202)(1) specifically provides that under the Public Health Code temporary housing shall not constitute a dwelling and is thus not subject to the code. Although the housing provisions of the Public Health Code are not yet in effect, we consider the fact that temporary housing is excluded under the code to reflect a legislative intent that the State Department of Corrections Act supersedes the Housing Act of 1917. Had the Legislature desired Michigan housing provisions to apply to the prisons we would have expected some expression of this intent in article 12 of the Public Health Code. While it might be sound public policy to require the state penal institutions to be in compliance with state housing laws, this is a determination that must be made by the Legislature.

Since the housing chapter of the Public Health Code is not yet in effect, we decline to address plaintiffs' contention that said chapter represents an unconstitutional delegation of legislative power.

Affirmed in part; reversed in part.

---

[4] MCL 125.581 *et seq.;* MSA 5.2931 *et seq.*