CITY OF DETROIT v VOLUNTEERS OF AMERICA

Docket No. 96796. Submitted March 15, 1988, at Detroit. Decided June 21, 1988. Leave to appeal applied for.

Volunteers of America, a nonprofit corporation, entered into a contract with the Michigan Department of Corrections whereby a portion of VOA's property, located at 6060 Rivard in the City of Detroit, would be used as a probation residential center or halfway house. A second contract, between VOA and the chief executive officer of Wayne County, provided that VOA's facilities were to house misdemeanant offenders ordered into VOA's custody by referring courts. A portion of the property was certified for use as a dormitory and lodging house, but no part of the property was certified for use as a penal or correctional facility. The City of Detroit Department of Buildings and Safety Engineering inspected the property, cited several zoning code violations, and ordered VOA to discontinue use of the property as a halfway house because no permit for such use had been issued. VOA continued operating the facility and enlarged its dormitory facilities in anticipation of performing its obligations under the contract with the Wayne County chief executive officer. The City of Detroit filed suit against VOA in Wayne Circuit Court seeking an order restraining VOA from using its facilities, without a permit or approval by the City of Detroit, as a penal or correctional institution. The court, Henry J. Szymanski, J., issued an order permanently enjoining VOA from conducting, operating, maintaining or permitting the continuance of the property as a penal or correctional institution for treatment or rehabilitation of offenders in violation of the zoning ordinance. VOA appealed.

The Court of Appeals held:

1. VOA's argument that the City of Detroit has no authority to prohibit the use of VOA's property as a rehabilitation center, asserting that when the Michigan Department of Corrections

REFERENCES

Am Jur 2d, Appeal and Error §§ 65 et seq.

Am Jur 2d, Zoning and Planning §§ 149 et seq.

Applicability of zoning regulations to governmental projects or activities. 61 ALR2d 970.

leases a facility for its own use a city or municipal government may not interfere with that use by way of any zoning or other legislative act, is rejected. Voa, not the Department of Corrections, has the responsibility of operating the rehabilitation center. Under these circumstances voa remains subject to applicable local zoning ordinances.

2. Voa's argument that the trial court erred in granting injunctive relief to the city because voa was not provided with the requisite notice of the hearing at which that relief was requested is without merit. Voa has suffered no prejudice as a result of the possible procedural infirmity associated with the order for permanent injunction.

Affirmed.

1. ZONING — ORDINANCES — DEPARTMENT OF CORRECTIONS — PRIVATE PROPERTY OWNERS — PROBATION RESIDENTIAL CENTERS.

The Department of Corrections is immune from local zoning ordinances when establishing state penal institutions where it will have active participation in the operation of the facility; however, where the Department of Corrections enters into a contract whereby a private property owner is to maintain and operate a probation residential center, the private property owner remains subject to applicable local zoning ordinances.

2. MOTIONS AND ORDERS — ERROR — APPEAL — COURT RULES.

An error in anything done or omitted by a court or a party may not be used as a ground for disturbing an order unless a refusal to do so is inconsistent with substantial justice (MCR 2.613[A]).

*Zamplas, Paskin, Nagi, Baxter, Johnson & Walker, P.C.* (by *Jeannette A. Paskin*), for defendant.

Before: WAHLS, P.J., and R. M. MAHER and G. S. ALLEN,* JJ.

PER CURIAM. Defendant, Volunteers of America, appeals from a November 3, 1986, order of the Wayne Circuit Court denying defendant's motion to set aside a permanent injunction issued on October 10, 1986, prohibiting defendant from oper-

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

ating a penal or correctional institution on its premises at 6060 Rivard in the City of Detroit. We affirm.

The record reveals that defendant's property on Rivard, which was once a manufacturing plant, is situated in a district zoned for intensive industrial activity. Although a portion of the property was certified for use as a dormitory and lodging house, no part of it was certified for use as a penal or correctional facility. In October, 1984, defendant entered into a contract with the Michigan Department of Corrections under the terms of which a portion of its property was to be used as a probation residential center or halfway house. This contract expired on September 30, 1985.[1] Before the expiration of this contract, defendant entered into a second contract with the chief executive officer of Wayne County under the terms of which defendant's facilities were to house "misdemeanant offenders ordered into [defendant's] custody by referring courts." This contract expires on November 30, 1989, and thereafter is renewable for two five-year periods.

On November 9, 1984, defendant's property was inspected by the Detroit Department of Buildings and Safety Engineering, which, one week later, informed defendant by letter that its facilities contained several building and zoning code violations and ordered defendant to "[d]iscontinue in the use of [the] premises as a guarded correctional unit (halfway house) as no permit has been issued

---

[1] Regarding defendant's contractual relationship with the Michigan Department of Corrections, the record filed on appeal contains only one contract, effective between October 1, 1984, and September 30, 1985. In response to a request made at oral arguments, plaintiff supplied this Court with a copy of a second contract, effective between October 1, 1985, and September 30, 1987, as well as an addendum to the second contract which, while not specifically extending the effective date of the second contract, obligates the department to compensate defendant through September 30, 1988, for services rendered.

for this use. Ord. 290-H, Sec. 12-11-16.1." This order notwithstanding, defendant continued to operate its facility on the property and, according to the City of Detroit, enlarged its dormitory facilities in anticipation of performing its obligations under the contract with the Wayne County chief executive officer. In response to defendant's actions, the City of Detroit, plaintiff in this case, filed a verified complaint in the Wayne Circuit Court on January 31, 1985, seeking an order restraining defendant from using its facilities, without a permit or plaintiff's approval, as a penal or correctional institution.[2] On October 10, 1986, the circuit court issued an order permanently enjoining defendant from "conducting, operating, maintaining or permitting the continuance of the . . . use and occupation of the premises at 6060 Rivard in the City of Detroit as a penal or correctional institution for treatment or rehabilitation of offenders . . . in violation of the Detroit Zoning Ordinance, 390-G." On November 3, 1986, after oral argument was conducted on October 31, 1986, the circuit court denied defendant's motion to set aside the permanent injunction. This appeal ensued.

On appeal, defendant first argues that the City of Detroit has no authority to prohibit the use of the Rivard property as a rehabilitation center,

---

[2] Defendant's application to the Department of Buildings and Safety Engineering for a permit to expand its facilities to include a correctional institute was denied in a decision dated February 11, 1985, and in a decision dated April 16, 1985, the Detroit Board of Zoning Appeals affirmed the department's denial. In a decision dated October 8, 1985, the board reaffirmed its earlier decision. Finally, in a letter dated August 19, 1985, the board—after having once again considered a request, this time having been filed not by defendant but by Edward Davis Associates—dismissed the case with prejudice because "[t]he petitioner failed to present evidence to show that the further expansion, enlargement, and concentration of other non-conforming uses would not be injurious and/or detrimental to the industrial area" and because "[t]here would be an overuse of the property by adding the additional proposed use."

asserting that, when the Michigan Department of Corrections leases a facility for its own use, a city or municipal government may not interfere with that use by way of any zoning or other legislative act. Defendant relies on *Dearden v Detroit,* 403 Mich 257; 269 NW2d 139 (1978). In that case, the Michigan Department of Corrections, a state agency, leased a structure, formerly used as a convent, from the Roman Catholic Archdiocese of Detroit, intending to use it as a neighborhood rehabilitation center. After the department had begun using the building, the lessor archdiocese applied to the Detroit Department of Buildings and Safety Engineering for permission to use the former convent as a rehabilitation center. The application was denied, and the denial was affirmed by the Board of Zoning Appeals. The archdiocese then filed a complaint for superintending control in the Wayne Circuit Court, which affirmed the board's decision. Thereafter, this Court affirmed the circuit court's decision, *Dearden v Detroit,* 70 Mich App 163; 245 NW2d 700 (1976), and the archdiocese appealed to the Supreme Court. The Supreme Court, emphasizing that the zoning enabling act, MCL 125.581 *et seq.*; MSA 5.2931 *et seq.*, did not indicate whether the Legislature intended to subject the Michigan Department of Corrections to local zoning ordinances but that the legislation creating the Department of Corrections provided that the department "shall have exclusive jurisdiction" over penal institutions, MCL 791.204; MSA 28.2274, reversed the decision of this Court and held that the department was not subject to municipal zoning ordinances. In reaching this holding, the Supreme Court, noting that the statute conferred upon the department the "exclusive jurisdiction over . . . penal institutions," stated:

We read this language as a clear expression of the Legislature's intent to vest the department with complete jurisdiction over the state's penal institutions, subject only to the constitutional powers of the executive and judiciary, and not subject in any way to any other legislative act, such as the zoning enabling act.

\* \* \*

As noted above, the zoning enabling act does not indicate whether or not the Legislature intended to subject the department to local zoning ordinances. We can find no expression of a legislative intent in the language of that act to subject the department's exclusive jurisdiction over the state's penal institutions, and its duty to coordinate and adjust those institutions as an integral part of a unified, general correctional system, to the many and varied municipal zoning ordinances throughout the state. If the department were subject to those ordinances, the underlying policies of the general correctional system could be effectively thwarted by community after community prohibiting the placement of certain penal institutions in appropriate locations. A careful reading of the statute establishing the department evidences a contrary legislative intent.

We hold that in enacting MCL 791.201, *et seq.*; MSA 28.22271, *et seq.*, the Legislature intended to grant the Department of Corrections immunity from local zoning ordinances when establishing state penal institutions. Consequently, defendant's zoning ordinance is void to the extent that it attempts to prohibit the use of the subject property as a rehabilitation center. [403 Mich 265-267.]

See also *Pecoraro v Dep't of Corrections,* 100 Mich App 802; 300 NW2d 418 (1980), lv den 411 Mich 973 (1981); *Marquette Co v Bd of Control of Northern Michigan Univ,* 111 Mich App 521, 526; 314 NW2d 678 (1981); *Cody Park Ass'n v Royal Oak School Dist,* 116 Mich App 103, 106-107; 321 NW2d 855 (1982), lv den 417 Mich 985 (1983); and *Lu-*

*theran High School Ass'n v Farmington Hills,* 146
Mich App 641, 645-647; 381 NW2d 417 (1985), lv
den 425 Mich 870 (1986).

Although we do not disagree with defendant's
analysis of the ruling and significance of *Dearden,*
we believe that its reliance on that case is mis-
placed. In *Dearden,* the department leased the
subject property from the private lessor and itself
operated a neighborhood rehabilitation center. In
this case, the department did not lease the Rivard
property, but rather merely entered into a con-
tract with defendant, who, as an independent con-
tractor, was to maintain and operate a probation
residential center. Moreover, the contract between
defendant and the chief executive officer of Wayne
County specifies that defendant, as an independent
contractor, "agrees . . . to obtain and maintain all
licenses and certificates required by State, Federal
and Local laws, ordinances, statutes and adminis-
trative rules and regulations . . . which are re-
quired for engagement in the contemplated ser-
vices and activities," further specifying that "[f]ail-
ure to comply with these requirements shall com-
prise a substantial breach of the terms of this
agreement, and shall constitute cause for immedi-
ate termination by the County." Thus, the *Dear-
den* rule, to reach the facts presented in this case,
would require substantial enlargement, and, in-
deed, enlargement to the point of permitting inde-
pendent contractors enjoying service contracts
with the Department of Corrections and contracts
with Wayne County including language specifically
holding the independent contractor responsible for
complying with local zoning ordinances, to ignore
with impunity the requirements of applicable mu-
nicipal laws. We are hesitant to enlarge the *Dear-
den* rule to this extent, believing that that rule—
involving the Supreme Court's construction of an

important statutory provision—should be carefully obeyed, and not necessarily amplified, by this Court. The ruling in *Dearden* was premised on the existence of the real, continuing, working and active participation of the Department of Corrections in the facility leased for use as a neighborhood rehabilitation center. Here, the department's participation, if it exists at all, is greatly attenuated. Under such a circumstance, we do not believe that defendant may properly disregard applicable local zoning ordinances.

Defendant also argues on appeal that the circuit court erred in granting injunctive relief to plaintiff because defendant was not provided with notice of the hearing at which that relief was granted, as is required under the court rules. MCR 2.119(C), 2.107(A). The hearing on plaintiff's motion for a permanent injunction was dismissed by the circuit court on September 26, 1986, the date originally scheduled for oral arguments on the motion. We have found no evidence in the record suggesting that plaintiff's motion was repraeciped; however, at the hearing on plaintiff's motion, which was conducted on October 10, 1986, plaintiff's attorney informed the court that defendant's attorney of record had requested that the hearing date be adjourned until October 10. We note that that same attorney of record was substituted by consent with new counsel by way of an order issued on October 16, 1986.[3]

Defendant's argument based on the lack of notice, however, lacks merit. MCR 2.613(A) provides that an error in anything done or omitted by a

[3] The consent to substitution signed by defendant's first attorney of record was undated. However, the notice of appearance filed by defendant's new counsel was dated September 30, 1986, and, as already noted, the order for substitution by consent was issued on October 16, 1986.

court or a party may not be used as a ground for disturbing an order unless a refusal to do so is inconsistent with substantial justice. In this case, even assuming that the circuit court erred in granting plaintiff's motion for a permanent injunction on October 10, 1986, no substantial injustice resulted because defendant subsequently filed a motion to set aside the injunction and was given an opportunity to present its arguments on the substantive issues raised in this case. At the hearing on defendant's motion, conducted on October 31, 1986, an attorney representing defendant appeared and argued that *Dearden, supra,* was applicable and mandated the dissolution of the October 10, 1986, injunction. The circuit court, after considering defendant's argument, affirmed its decision to enjoin defendant from operating a correctional institution for the treatment or rehabilitation of criminal offenders at its Rivard premises. Our examination of the facts and law in this case lead us to the same conclusion. Thus, since defendant has now been afforded review of the substantive merits of its case at both the circuit and appellate court levels, we fail to discern any prejudice suffered as a result of the possible procedural infirmity associated with the circuit court's October 10, 1986, order for permanent injunction.

Accordingly, the circuit court's order denying defendant's motion to set aside the permanent injunction issued on October 10, 1986, prohibiting defendant from operating a penal or correctional institution on its premises at 6060 Rivard in the City of Detroit is affirmed.

Affirmed.