MARQUETTE COUNTY v BOARD OF CONTROL OF NORTHERN
MICHIGAN UNIVERSITY

Docket No. 50541. Submitted May 12, 1981, at Marquette.—Decided
November 30, 1981.

The State of Michigan brought an action against the Board of
Control of Northern Michigan University and Omega Construc-
tion, Inc., seeking to enjoin the defendants from proceeding
with the construction of student housing on university property
until the defendants obtained a building permit which the
plaintiff alleged was required by the State Construction Code
Act. By stipulation of the parties, the County of Marquette was
substituted as plaintiff. The university moved for accelerated
judgment on the ground that the circuit court lacked jurisdic-
tion. Marquette Circuit Court denied the motion and enjoined
the defendants as requested, Edward A. Quinnell, J. The defen-
dants appeal. *Held:*

The trial court erred in applying the provisions of the State
Construction Code Act to enjoin the defendants from proceed-
ing with construction of university dormitories. The Legislature
has granted state universities exclusive jurisdiction over the
construction of campus buildings, thereby precluding applica-
tion of the construction code.

Reversed.

1. STATE — STATE AGENCIES — STATUTES.

A law enacted pursuant to the state's police power does not apply
to the state and its agencies absent a clear intention by the
Legislature for the law to so apply.

2. STATE — STATE AGENCIES — STATE UNIVERSITIES.

A state university is a state agency for purposes of statutory
construction.

3. STATE — STATE UNIVERSITIES — STATE CONSTRUCTION CODE.

A state university has exclusive jurisdiction, subject to prior

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes §§ 145, 146, 272-276.
[2, 3] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 14. ·

legislative approval, to erect or equip dormitories and is not subject to the provisions of the State Construction Code Act relative to the construction of buildings in general (MCL 125.1501 *et seq.,* 390.553, 390.558; MSA 5.2949[1] *et seq.,* 15.1120[3], 15.1120[8]).

*Gary L. Walker,* Prosecuting Attorney, for plaintiff.

*Miller, Canfield, Paddock & Stone* (by *Carl H. von Ende),* for defendant university.

Amici Curiae:

*Jackson, Lamb & Duerr,* for the Board of Regents of Eastern Michigan University.

*Steven L. Dykema,* for Ferris State University.

*David E. Dutcher,* for Grand Valley State College.

*Thomas Veum,* for Lake Superior State College.

*Anderson, Carr & Street,* for Board of Trustees of Michigan State University.

*Butzel, Long, Gust, Klein & Van Zile* (by *Robert M. Vercruysse),* for the Board of Control, Michigan Technological University.

*Hartman, Beier, Howlett, McConnell & Googasian,* for Oakland University.

*Currie, Kendall, Keith, Larkin, Pommerville & Merrill, P.C.,* for Saginaw Valley State College.

*Roderick K. Daane,* General Counsel, for Regents of the University of Michigan.

*Elmer L. Roller,* for Office of the General Counsel Board of Governors of Wayne State University.

*Kenneth M. Smythe,* University Attorney, for the Board of Trustees of Western Michigan University.

*J. David Kerr,* for Central Michigan University Board of Trustees.

Before: D. E. HOLBROOK, JR., P.J., and M. F. CAVANAGH and BEASLEY, JJ.

D. E. HOLBROOK, JR., P.J. The trial court in the instant case found that the State Construction Code Act of 1972, MCL 125.1501 *et seq.;* MSA 5.2949(1) *et seq.,* applied to the defendant university and issued a final order enjoining defendants from refusing to comply with a previously issued stop-construction order until such time as defendants were to comply with the State Construction Code. This order was stayed for a period of 20 days so that defendants could appeal. On March 19, 1980, the Board of Control of Northern Michigan University, hereafter referred to as defendant, filed its claim of appeal and a motion for stay of the circuit court injunction. On March 29, 1980, this Court granted the motion for stay.

On appeal defendant raises four issues. We address but one. The crucial issue before us is whether the Legislature intended the State Construction Code, MCL 125.1501 *et seq.;* MSA 5.2949(1) *et seq.,* to apply to the construction of dormitories on the campuses of state universities.

The trial court, in our opinion, did not review the above issue in an appropriate manner. Its sole statement relating to the issue was as follows:

"The [State Construction Code] Act neither expressly includes nor expressly excludes application to [state] universities. Clearly if the Legislature had intended to exclude them, it could have said so; for example, see § 8(4). The inference that the act is intended to apply to such universities is reinforced by the expressed legislative concern for public safety. It would be anomolous indeed to conclude that the Legislature is concerned with public safety throughout the state, except in housing constructed by the state universities. The inference that the Legislature intended the act to apply to state universities, or at least to self-liquidating projects, is also supported by the express legislative control over the acquisition of land and buildings for such projects. It seems fair to assume that if the Legislature wishes to insure that such projects are economically sound, which it does, it would also seek to insure that such projects are safe for the users thereof and are otherwise in compliance with nationally recognized construction standards."

As the trial court noted, the code does not contain any provisions indicating whether it applies either generally to state government entities or specifically to state universities. We agree with defendants that by applying rules of statutory construction to the language and background of the code the trial court erred when it held the statute to apply to defendant, thus requiring reversal.

There seems to be little question but that the State Construction Code was enacted under the state's police power. It is equally clear that even if a law is enacted under the state's police power it does not apply to the state unless it is very clear that the Legislature intended it to apply to the state and its agencies. See *Miller v Manistee County Board of Road Comm'rs,* 297 Mich 487; 298 NW 105 (1941), and *Mead v Michigan Public Service Comm,* 303 Mich 168; 5 NW2d 740 (1942). Nor can there be any dispute that for purposes of

statutory construction state universities are agencies of the state. *Attorney General ex rel Cook v Burhans,* 304 Mich 108; 7 NW2d 370 (1942), *Lucking v People,* 320 Mich 495; 31 NW2d 707 (1948).

In determining whether the Legislature nevertheless intended that the construction code should apply to defendant under today's narrowed police power exception, we look to the enabling legislation passed to establish the powers of certain universities. MCL 390.553, 390.558; MSA 15.1120(3), 15.1120(8), referring specifically to the regional universities, including defendant, provide respectively:

"A board of control shall have general supervision of its institution, the control and direction of all funds of the institution, and such other powers and duties as may be prescribed by law."

and:

"A board, after approval by the legislature, *may acquire land or acquire or erect buildings, or alter, equip or maintain them, to be used as residence halls, apartments,* dining facilities, student centers, health centers, stadiums, athletic fields, gymnasiums, auditoriums, parking structures and other educational facilities." (Emphasis supplied.)

This language indicates that the Legislature went a step further than the constitution required, by not only immunizing the educational and fiscal decisions of state universities from legislative interference, but by also providing the universities with a kind of exclusive jurisdiction over the construction of campus buildings, subject to prior legislative approval. Thus, even if a university's decisions regarding the mechanics of dormitory

construction would not have fallen within their constitutional grant of autonomy for educational-fiscal decisions, these matters became part of a university's province because the Legislature has seen fit to confer exclusive jurisdiction on the universities to "erect or equip buildings" assuming that there has been prior legislative "approval". As a result, the code here is similar to legislation involved in *Dearden v Detroit,* 403 Mich 257; 269 NW2d 139 (1978), in which the Supreme Court considered whether the Michigan Department of Corrections was subject to a local zoning ordinance enacted under the state zoning enabling act. MCL 125.581 *et seq.;* MSA 5.2931 *et seq.* There, the Court pointed to legislation which explicitly conferred upon the Corrections Department "exclusive jurisdiction over penal institutions". The Court observed:

"We read this language as a clear expression of the Legislature's intent to vest the department with complete jurisdiction over the state's penal institutions, subject only to the constitutional powers of the executive and judiciary, and not subject in any way to any other legislative act, such as the zoning enabling act." *Id.,* 265.

In effect, the Court established another principle of statutory construction which supports defendant in the present case: if one act establishes a state agency's exclusive jurisdiction over certain subject matter and a second act of general application does not state whether it applies to the agency in question, the second act does not apply to that agency. Accord, *Pecoraro v Dep't of Corrections,* 100 Mich App 802; 300 NW2d 418 (1980). In *Pecoraro,* the Court held that the same grant of exclusive jurisdiction to the Corrections Depart-

ment which the Court considered in *Dearden* even prevents the application of a housing statute which expressly mentioned "jails" as being within its purview. It is true that the language of the legislation in *Dearden* and *Pecoraro,* establishing the exclusive jurisdiction of the Michigan Department of Corrections, differs somewhat from the corresponding language in the present case setting forth the powers of regional state universities. Still, we believe that the analogy between those cases and the present case is persuasive.

Accordingly, we hold that the trial court erred in applying the State Construction Code to defendant in the construction of dormitories on defendant's campus. The restraining order is therefore set aside.

Reversed. No costs, a public question being involved.