BURT TOWNSHIP v DEPARTMENT OF NATURAL RESOURCES

Docket No. 200328. Submitted October 7, 1997, at Grand Rapids. Decided December 30, 1997, at 9:10 A.M.

Burt Township brought an action in the Cheboygan Circuit Court against the Department of Natural Resources, seeking a declaration that the defendant, in constructing and operating a public boat launch on the shore of Burt Lake, is subject to the plaintiff's zoning ordinances. The court, Robert C. Livo, J., issued the requested declaratory judgment. The DNR appealed, and the township cross appealed.

The Court of Appeals *held*:

1. The Township Rural Zoning Act (TRZA), MCL 125.271 *et seq.*; MSA 5.2963(1) *et seq.*, permits townships to provide by zoning ordinance for the regulation of land development to meet the needs of citizens for recreation. The TRZA does not specifically indicate that the Legislature intended the DNR to be subject to local zoning ordinances.

2. The Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq.*; MSA 13A.101 *et seq.*, provides that the DNR shall provide and develop facilities for outdoor recreation, shall acquire, construct, and maintain facilities for vehicles in navigable waters within the state, and shall use the Michigan State Waterways Fund for the construction, operation, and maintenance of boating facilities. These mandatory duties, however, do not indicate that the Legislature intended the DNR to be free of any constraints imposed by local zoning ordinances when constructing or maintaining public boating facilities.

3. Const 1963, art 4, § 52—which provides that the conservation and development of the natural resources of the state are to be of paramount public concern in the interest of the people—does not specify any one entity as the administrator of the state's natural resources and provides no support to the DNR's contention that it is not subject to local zoning ordinances.

4. Subjecting the DNR to local zoning regulations when it constructs or maintains public boating facilities will not thwart the Legislature's intent that the DNR provide outdoor recreation facili-

ties. A lawful land use may not be totally excluded by zoning ordinance.

5. The Court of Appeals lacks jurisdiction over the township's cross appeal inasmuch as the township was not an aggrieved party in the circuit court proceeding.

Affirmed.

WHITE, P.J., dissenting, stated that the DNR's mandate under the NREPA to provide and develop facilities for outdoor recreation, its power to buy or condemn land for this purpose, and its power to acquire and construct facilities for vessels in navigable waters is not subject to or dependent on local zoning regulation. The trial court's order should be reversed.

ZONING — TOWNSHIP ZONING ORDINANCES — PUBLIC BOAT LAUNCHES — DEPARTMENT OF NATURAL RESOURCES.

The Township Rural Zoning Act and the Natural Resources and Environmental Protection Act provide no exemption to the Department of Natural Resources from township zoning ordinances with respect to the construction and maintenance of a public boat launch at a lake (MCL 125.271 *et seq.*, 324.101 *et seq.*; MSA 5.2963(1) *et seq.*, 13A.101 *et seq.*).

*Jeffrey T. Lyon*, for the plaintiff.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *A. Michael Leffler*, Assistant in Charge, and *James L. Stropkai* and *Stephen M. Rideout*, Assistant Attorneys General, for the Department of Natural Resources.

Amici Curiae:

*Olson, Noonan, Ursu & Ringsmuth, P.C.* (by *James M. Olson* and *Christopher M. Bzdok*), for Burt Township Association; Tip of the Mitt Watershed Council; Michigan Lake & Streams Association; Torch Lake Property Owners Association; and United Burt Lake Association.

Before: WHITE, P.J., and CAVANAGH and REILLY, JJ.

CAVANAGH, J. Defendant Michigan Department of Natural Resources (DNR) appeals as of right the trial court order finding that it must comply with plaintiff Burt Township's zoning ordinances in constructing a public access facility on the northwest shore of Burt Lake. Plaintiff cross appeals. We affirm.

In 1989, defendant obtained options on two lots on Burt Lake for the purpose of constructing a boat launch facility for public access. In a letter dated December 22, 1990, plaintiff's zoning administrator, Stanley Parvanoff, noted that defendant's proposed project had not been approved by the township and requested that defendant submit an application for the township's review. Defendant informed Parvanoff that it did not need plaintiff's approval of the project because defendant is a department of the State of Michigan.

On February 13, 1992, plaintiff filed a complaint requesting a declaratory judgment that the DNR is required to comply with its zoning ordinances. However, pursuant to a stipulation between the parties, the action was dismissed without prejudice on January 8, 1993, because defendant did not have sufficient funding to complete the project. Thereafter, defendant obtained funding for the boat launch and began construction without obtaining plaintiff's approval. On September 30, 1996, plaintiff filed its complaint in the instant action, again seeking a declaratory judgment that defendant was required to comply with its zoning ordinances.

At a hearing on October 8, 1996, the parties presented arguments regarding whether defendant was subject to plaintiff's zoning ordinances. On November 5, 1996, the trial court issued a written

opinion finding that defendant was required to conform with plaintiff's zoning ordinances. On December 16, 1996, an order incorporating this ruling was entered.

Defendant appealed as of right. Plaintiff filed a cross appeal. Because funding for the boat launch will expire in September 1998, this Court granted defendant's motion for an expedited appeal.

I

Defendant argues that the trial court erred in finding that its construction and operation of a public access facility was not exempt from local zoning ordinances. This issue presents a question of law. We review questions of law de novo. *Schroeder v Detroit*, 221 Mich App 364, 366; 561 NW2d 497 (1997).

The trial court relied on the Supreme Court's decision in *Dearden v Detroit*, 403 Mich 257; 269 NW2d 139 (1978). In *Dearden*, the Michigan Department of Corrections sought to lease a building owned by the Archdiocese of Detroit as a neighborhood rehabilitation center. The area was zoned two-family residential. The Board of Zoning Appeals denied requests for a variance and permission to change the use of the property, and the Department of Corrections appealed. The issue on appeal was whether the Department of Corrections, a state agency, was subject to the local zoning ordinances of the City of Detroit. *Id.* at 260-261.

The *Dearden* Court held that "legislative intent, where it can be discerned, is the test for determining whether a governmental unit is immune from the provisions of local zoning ordinances." *Id.* at 264. The Court then compared the statutory provisions

delineating the authority of the Department of Corrections, MCL 791.201 *et seq.*;  MSA 28.2271 *et seq.*,  with the city's statutory authority to regulate the use of the lands within its territory, MCL 125.581 *et seq.*;  MSA 5.2931 *et seq.*  The Court noted that, pursuant to MCL 791.204;  MSA 28.2274,  the Department of Corrections has exclusive jurisdiction over penal institutions.  The Court considered the statute "a clear expression of the Legislature's intent to vest the department with complete jurisdiction over the state's penal institutions, subject only to the constitutional powers of the executive and judiciary, and not subject in any way to any other legislative act." *Dearden*, *supra* at 265. Furthermore, the Court concluded that the language of the statute "evidences a legislative intent to nullify the effect of any other statute which is inconsistent with the department's exclusive jurisdiction over the state's penal institutions." *Id.* at 266. The Court could not find any expression of a legislative intent in the zoning enabling act to subject the department's exclusive jurisdiction over penal institutions "to the many and varied municipal zoning ordinances throughout the state." *Id.* at 266-267. Accordingly, the Court held that the Legislature had intended to grant the Department of Corrections immunity from local zoning ordinances when establishing state penal institutions. *Id.* at 267.

Therefore, under *Dearden*, the appropriate analysis is to compare the statutes at issue and discern the legislative intent to determine whether the DNR is immune from plaintiff's zoning ordinances. Accordingly, we must examine the texts of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq.*;  MSA 13A.101 *et seq.*,  and the

Township Rural Zoning Act (TRZA), MCL 125.271 *et seq.*;  MSA 5.2963 *et seq.*

Under the TRZA, local units of government are given the authority to regulate land use. MCL 125.271(1); MSA 5.2963(1)(1)  provides in part:

> The township board of an organized township in this state may provide by zoning ordinance for the regulation of land development and the establishment of districts in the portions of the township outside the limits of cities and villages which regulate the use of land and structures; to meet the needs of the state's citizens for food, fiber, energy, and other natural resources, places of residence, recreation, industry, trade, service, and other uses of land; to insure that use of the land shall be situated in appropriate locations and relationships; to limit the inappropriate overcrowding of land and congestion of population, transportation systems, and other public facilities; to facilitate adequate and efficient provision for transportation systems, sewage disposal, water, energy, education, recreation, and other public service and facility requirements; and to promote public health, safety, and welfare. . . . Ordinances regulating land development may also be adopted designating or limiting the location, the height, number of stories, and size of dwellings, buildings, and structures that may be erected or altered, including tents and trailer coaches, and the specific uses for which dwellings, buildings, and structures, including tents and trailer coaches, may be erected or altered.

The TRZA states that townships cannot regulate or control oil and gas wells. In addition, MCL 125.271(2); MSA 5.2963(1)(2)  specifies that any ordinance adopted pursuant to the act is subject to the Electric Transmission Line Certification Act, MCL 460.561 *et seq.*;  MSA 22.150(1) *et seq.*  However, the TRZA does not specifically indicate whether the Legislature

intended the DNR to be subject to local zoning ordinances. See *Dearden, supra* at 266.

We therefore turn to the NREPA to ascertain whether the Legislature intended to grant the DNR immunity from the provisions of local zoning ordinances. Defendant relies on three sections of the NREPA to support its claim. Section 503 provides in pertinent part, "The department shall . . . provide and develop facilities for outdoor recreation." MCL 324.503(1); MSA 13A.503(1). The relevant portion of § 78105 states:

> The department shall have the following powers and duties:
>
> (a) To acquire, construct, and maintain harbors, channels, and facilities for vehicles in the navigable waters lying within the boundaries of the state of Michigan. [MCL 324.78105; MSA 13A.78105.]

Finally, § 78110 states:

> The Michigan state waterways fund is created in the state treasury. The fund shall be administered by the state treasurer and shall be used by the department solely for the construction, operation, and maintenance of recreational boating facilities, the acquisition of property for the purposes of this part, and for the administration of this part. [MCL 324.78110(a); MSA 13A.78110(a).]

The use of the word "shall" in a statute connotes a mandatory duty or requirement. *Hadfield v Oakland Co Drain Comm'r*, 218 Mich App 351, 357; 554 NW2d 43 (1996). Defendant contends that the use of the word "shall" in the sections quoted above manifests the Legislature's intent that the DNR provide public boating access facilities free of any constraints imposed by local zoning ordinances.

In support of this argument, defendant relies on *Marquette Co v Bd of Control of Northern Michigan Univ*, 111 Mich App 521; 314 NW2d 678 (1981). In *Marquette Co*, the issue was whether the state construction code act, MCL 125.1501 *et seq.*; MSA 5.2949(1) *et seq.*, applied when a state university was constructing buildings on its campus. This Court found that statutory language giving the university the authority to erect campus buildings indicated that universities had exclusive jurisdiction under *Dearden*. *Marquette Co, supra* at 527. Defendant points out that the language in the DNR's enabling statute is similar to that of the university's enabling statute in that each entity is given the authority to construct certain facilities.

However, more recent case law suggests that such general language is insufficient to establish that an entity has exclusive jurisdiction. See *Addison Twp v Dep't of State Police (On Remand)*, 220 Mich App 550; 560 NW2d 67 (1996); *Lutheran High School Ass'n v Farmington Hills*, 146 Mich App 641; 381 NW2d 417 (1985); *Cody Park Ass'n v Royal Oak School Dist*, 116 Mich App 103; 321 NW2d 855 (1982). In *Lutheran High School Ass'n* and *Cody Park Ass'n*, this Court held that the School Code[1] does not show a clear legislative intent that schools be exempt from local zoning ordinances. *Lutheran High School Ass'n, supra* at 648; *Cody Park Ass'n, supra* at 108. In *Addison Twp*, this Court held that the state police is not immune from the provisions of local zoning ordinances. In each of these cases, despite the fact that the Legislature had allocated certain duties to the par-

---

[1] MCL 380.1 *et seq.*; MSA 15.4001 *et seq.*

ties seeking to avoid compliance with local zoning regulations, in the absence of any specific language expressing such an intention, this Court found no evidence of a legislative intent to exempt the parties from application of the ordinances. As the *Cody Park Ass'n* panel explained, "The mere fact that the Legislature has specified the designated decision-making authority for such purposes cannot be extended to support an interpretation that such authority is exclusive and thus not subject to local zoning ordinances." *Id.* at 108.

We conclude that the analyses in *Addison Twp*, *Lutheran High School Ass'n*, and *Cody Park Ass'n* adhere more faithfully to the rule enunciated in *Dearden* than that of *Marquette Co.* Accordingly, we must reject defendant's claim. The passages of the NREPA cited by defendant do not show a clear legislative intent that the DNR's activities be exempt from local zoning ordinances. See *Lutheran High School Ass'n*, *supra.* Furthermore, defendant has cited no portion of the NREPA that indicates a legislative intent to nullify the effect of any other statute that interferes with the DNR's jurisdiction over the natural resources of the state. In the absence of any evidence that the Legislature intended to give the DNR exclusive jurisdiction over its subject matter, we cannot find it immune from local zoning ordinances.

Defendant also relies on the state constitution, which provides, "The conservation and development of the natural resources of the state are hereby declared to be of paramount public concern in the interest of the health, safety and general welfare of the people." Const 1963, art 4, § 52. However, the constitution does not single out any particular entity

as the preeminent administrator of the state's natural resources. While the Legislature has undeniably assigned defendant the task of providing outdoor recreational facilities for public use, it has entrusted similar responsibilities to local entities. The TRZA permits a township to "provide by zoning ordinance for the regulation of land development . . . to meet the needs of the state's citizens for . . . recreation." MCL 125.271(1); MSA 5.2963(1)(1). Accordingly, we cannot conclude that the constitution compels a finding that the DNR is exempt from local zoning ordinances.

Finally, defendant argues that if it is not immune from local zoning requirements, the Legislature's intent that the state provide sites for outdoor recreation and access to state waters would be thwarted because communities could enact local ordinances prohibiting the construction of the necessary facilities. We disagree. An ordinance that has the effect of totally prohibiting a particular land use within a township is impermissible in the absence of special circumstances. MCL 125.297a; MSA 5.2963(27a); *English v Augusta Twp*, 204 Mich App 33, 37; 514 NW2d 172 (1994). A zoning ordinance may not totally exclude a lawful land use where (1) there is a demonstrated need for the land use in the township or surrounding area, and (2) the use is appropriate for the location. *Id.* at 37-38. Accordingly, defendant will have recourse if a township attempts to engage in exclusionary zoning.

II

On cross appeal, plaintiff argues that the trial court has the jurisdiction to determine the rights and liabilities of the parties. We conclude that we do not have

jurisdiction over this issue. Pursuant to MCR 7.203(A), this Court has jurisdiction only over "an aggrieved party." *Reddam v Consumer Mortgage Corp*, 182 Mich App 754, 757; 452 NW2d 908 (1990). Because the trial court held that it had jurisdiction in this case, plaintiff is not an aggrieved party.

Affirmed. No taxable costs pursuant to MCR 7.219, a question of public policy being involved.

REILLY, J., concurred.

WHITE, P.J. (*dissenting*). I respectfully dissent.

While I agree with the majority that our task is to discern and implement the Legislature's intent, I do not agree that the Legislature intended the Department of Natural Resources' mandate to provide and develop facilities for outdoor recreation, its power to buy or condemn land for this purpose, and its power to acquire and construct facilities for vessels in the navigable waters within this state to be subject to and dependent on local zoning decisions.

While neither the Township Rural Zoning Act (TRZA), MCL 125.271 *et seq.*; MSA 5.2963 *et seq.*, nor the Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq.*; MSA 13A.101 *et seq.*, expressly addresses the question whether the DNR's implementation of the NREPA is subject to local zoning ordinances, the NREPA sets forth a comprehensive legislative scheme addressing the protection, conservation, and development of the natural resources of this state. The DNR is granted "the power and jurisdiction over the management, control, and disposition of all land under the public domain, except for those lands under the public domain that are managed by other state agencies to carry out their

assigned duties and responsibilities," and is granted authority to buy or condemn land on behalf of the people of the state for the purposes of providing and developing facilities for outdoor recreation. MCL 324.503; MSA 13A.503. Subchapter 4 of the NREPA creates the Michigan State Waterways Commission, MCL 324.78102; MSA 13A.78102, and the Michigan State Waterways Fund, MCL 324.78110(1); MSA 13A.78110(1), and grants the DNR certain powers and duties, including "[t]o acquire, construct, and maintain . . . facilities for vessels in the navigable waters lying within the boundaries of the state of Michigan," MCL 324.78105(a); MSA 13A.78105(a), and to charge fees for the daily and seasonal use of state-operated public access sites, and deposit the revenues in the Michigan State Waterways Fund. MCL 324.78105(h); MSA 13A.78105(h).

While the NREPA contemplates that there will be opportunities for cooperation between the DNR and local units of government, MCL 324.78106; MSA 13A.78106, the NREPA does not reflect an intent that the DNR's implementation of its purpose be subject to or dependent on local cooperation. The navigable waters within this state belong to all the citizens of this state, *Collins v Gerhardt*, 237 Mich 38; 211 NW 115 (1926), and the Legislature has granted the DNR the power to construct facilities for vessels in those waters. The grant of the authority to acquire or condemn land in the name of the people of this state and to develop facilities for recreation and navigation, using money within a state fund, is inconsistent with the view that a local unit of government can control public access through local zoning. I would reverse.