BURT TOWNSHIP v DEPARTMENT OF NATURAL RESOURCES

Docket No. 111334. Argued January 22, 1999 (Calendar No. 13). Decided
    June 2, 1999.

Burt Township brought an action in the Cheboygan Circuit Court
    against the Department of Natural Resources, after the department
    began construction of a boat launch on Burt Lake without the
    approval of the township zoning board. The court, Robert C. Livo,
    J., held that, while Burt Township could not prevent the DNR from
    building the boat launch, it had to comply with the township zon-
    ing ordinance. The Court of Appeals, CAVANAGH and REILLY, JJ.
    (WHITE, P.J., dissenting), affirmed. 227 Mich App 252 (1997) (Docket
    No. 200328). The DNR appeals.

In an opinion by Justice YOUNG, joined by Chief Justice WEAVER,
    and Justices BRICKLEY, TAYLOR, and CORRIGAN, the Supreme Court
    held:

The DNR, in the construction of its public-access boat launch, is
    subject to Burt Township's zoning ordinance. The Natural
    Resources and Environmental Protection Act and the Township
    Rural Zoning Act appear to provide coextensive statutory rights
    concerning the protection of natural resources in general and the
    development of recreation facilities and other waterfront develop-
    ments in particular. Nothing in the NREPA establishes a clear expres-
    sion of legislative intent to exempt the DNR's activities in this case
    from the Burt Township zoning ordinance.

1. The Township Rural Zoning Act and the township planning act
    provide townships with extensive authority to regulate the use and
    development of land within their borders, including waterfront
    property. Moreover, the Supreme Court in *Dearden v Detroit*, 403
    Mich 257 (1978), declined to adopt a rule that state agencies have
    inherent immunity from local zoning ordinances. Unlike the statute
    at issue in *Dearden*, there is nothing in the NREEPA that suggests a
    clear expression of legislative intent to vest the DNR with exclusive
    jurisdiction over its subject matter and thus to exempt its activities
    in this case from the Burt Township zoning ordinance.

2. The Legislature, in directing that the DNR engage in certain
    governmental functions, did not intend that it be authorized to do
    so in any manner it chooses. According the DNR power and jurisdic-

tion to manage land within its control is not the same as granting it exclusive jurisdiction. The fact that the DNR is mandated to create recreational facilities on public land it manages and controls does not indicate a legislative intent that it may do so in contravention of local zoning ordinances. Also, there is no particular significance in the fact that the TRZA does not expressly provide that state agencies are subject to zoning ordinances. The *Dearden* Court declined to hold that state agencies are inherently immune from local zoning ordinances.

Affirmed.

Justice CAVANAGH, joined by Justice KELLY, dissenting, stated that there is no intent in the NREPA to subject its broad mandates to the complete discretion of every local municipality. If the DNR were subject to zoning ordinances in each of the local municipalities that exist throughout the state, local communities could effectively prohibit the placement of public access sites within their communities, thus thwarting the DNR's performance of its legislatively mandated duty.

*Secrest, Wardle, Lynch, Hampton, Truex & Morley* (by *Gerald A. Fisher* and *Thomas R. Schultz*), and *Lyon & Ingelson* (by *Jeffrey T. Lyon*) for plaintiff-appellee.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *James L. Stropkai* and *Stephen M. Rideout,* Assistant Attorneys General, for defendant-appellant.

Amici Curiae:

*Kohler & Black, P.L.C.* (by *Ellen J. Kohler*), for Michigan Environmental Council.

*Olson, Noonan, Ursu & Ringsmuth, P.C.* (by *James M. Olson* and *Christopher M. Bzdok*), for Burt Township Association.

*Butzel, Long* (by *James Y. Stewart*) for Michigan Boating Industries Association.

*Miller, Canfield, Paddock & Stone, P.L.C.* (by *Larry J. Saylor*), for Huron-Clinton Metropolitan Authority.

*David M. McCleary* for Michigan United Conservation Clubs, Federation of Fly Fishers, Anglers of the AuSable, and Michigan Recreation and Parks Association.

*Bauckham, Sparks, Rolfe & Thomsen, P.C.* (by *John H. Bauckham*), for Michigan Townships Association and Michigan Municipal League Legal Defense Fund.

YOUNG, J. We granted leave to appeal in this case to determine whether defendant, the Michigan Department of Natural Resources, is required to comply with plaintiff Burt Township's zoning ordinance in constructing a public-access boat launch on the shores of Burt Lake. We conclude that the DNR is subject to Burt Township's zoning ordinance. Accordingly, we affirm the judgment of the Court of Appeals.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1989, the DNR obtained title to two lots on Burt Lake[1] for the purpose of constructing a public-access boat launch.[2] Upon learning of the proposed development, the Burt Township zoning administrator sent a letter to the DNR, noting that the project had not been approved by the township zoning board and requesting that the DNR submit an application for the board's review. The DNR responded that it did not need the

---

[1] The lots consist of 5.6 acres, with 362.3 feet of water frontage.

[2] The proposed facility would accommodate fifty vehicles and trailers and would include a "vault toilet."

board's approval because the DNR was a state agency and local zoning ordinances therefore did not apply to it.

Burt Township originally filed suit in 1992, requesting a declaratory judgment that the DNR was required to comply with the zoning ordinance. However, Burt Township voluntarily dismissed the lawsuit without prejudice in June 1993. According to Burt Township, it agreed to the dismissal because the DNR indicated that it did not have sufficient funding to complete the boat launch. Moreover, township officials believed that they had reached an informal agreement with the DNR concerning the scope of the project in the event that the DNR later chose to pursue the project.

In 1995, having obtained the necessary funding, the DNR began construction of the boat launch. However, the DNR did not seek approval from or otherwise notify the township board. As a result, Burt Township filed the instant lawsuit. The township again sought a declaratory judgment that the DNR was required to comply with the township zoning ordinance. The complaint also requested permanent injunctive relief.

Following a hearing, the trial court issued a written opinion. The court held that, while Burt Township could not prevent the DNR from building the boat launch, the DNR had to comply with the township zoning ordinance. The Court of Appeals, over a dissent by Judge WHITE, affirmed. 227 Mich App 252; 576 NW2d 170 (1997). We granted the DNR's application for leave to appeal. 458 Mich 865 (1998).

## II. STANDARD OF REVIEW

Whether the DNR's construction of the boat launch facility is subject to Burt Township's zoning ordinance is a question of law subject to de novo review. *Cardi-*

*nal Mooney High School v Michigan High School Athletic Ass'n*, 437 Mich 75, 80; 467 NW2d 21 (1991).

### III. ANALYSIS

#### A. *DEARDEN v DETROIT*—LEGISLATIVE INTENT

We agree with the parties and the Court of Appeals that the present dispute is governed by this Court's decision in *Dearden v Detroit*, 403 Mich 257, 264; 269 NW2d 139 (1978), in which we held that "the legislative intent, where it can be discerned, is the test for determining whether a governmental unit is immune from the provisions of local zoning ordinances."

In *Dearden*, the Michigan Department of Corrections leased a multiresidential structure from the archdiocese of Detroit with the intent to convert it into a rehabilitation center. However, the Detroit Board of Zoning Appeals denied the archdiocese's request for a variance and permission to change the use of the property. The archdiocese brought suit, seeking to set aside the board's decision. The Department of Corrections intervened. The circuit court and the Court of Appeals affirmed the board's decision denying the requested variance. *Id.* at 260-261.

This Court disagreed and held that the Department of Corrections was immune from local zoning ordinances when establishing state penal institutions. *Id.* at 267. The Court found in the statute establishing the authority of the Department of Corrections, MCL 791.201 *et seq.*; MSA 28.2271 *et seq.*, "a clear expression of the Legislature's intent to vest the department with complete jurisdiction over the state's penal institutions . . . ." *Id.* at 265. Conversely, the Court found nothing in the language of the zoning enabling act,

MCL 125.581 *et seq.*; MSA 5.2931 *et seq.*, to suggest a legislative intent

> to subject the department's exclusive jurisdiction over the state's penal institutions, and its duty to coordinate and adjust those institutions as an integral part of a unified, general correctional system, to the many and varied municipal zoning ordinances throughout the state. [*Id.* at 266-267.]

The Court concluded that Detroit's zoning ordinance was "void to the extent that it attempts to prohibit the use of the subject property as a rehabilitation center." *Id.* at 267.[3]

### B. THE DNR'S PROPOSED BOAT LAUNCH

In order to determine whether the DNR's boat launch is exempt from Burt Township's zoning ordinance, we must, as required by *Dearden*, examine the texts of the Township Rural Zoning Act (TRZA),[4] which provides Burt Township with authority to regulate land use and development, and the Natural Resources

---

[3] We note that the test enunciated in *Dearden*, while relatively straightforward in concept, has proven to be difficult to apply. Indeed, the Court of Appeals has issued several published decisions reaching varying conclusions regarding the application of the *Dearden* test. See, e.g., *Addison Twp v Dep't of State Police (On Remand)*, 220 Mich App 550; 560 NW2d 67 (1996) (holding that the Department of State Police was not immune from a local zoning ordinance); *Lutheran High School Ass'n v Farmington Hills*, 146 Mich App 641; 381 NW2d 417 (1985) (holding that a school district was subject to a zoning ordinance); *Cody Park Ass'n v Royal Oak School Dist*, 116 Mich App 103; 321 NW2d 855 (1982) (same); *Marquette Co v Northern Mich Univ Bd of Control*, 111 Mich App 521; 314 NW2d 678 (1981) (holding that a state university was immune from the State Construction Code Act, MCL 125.1501 *et seq.*; MSA 5.2949[1] *et seq.*). We express no opinion on the results reached in these cases. However, we note that the decisions in *Cody Park Ass'n*, *Lutheran High School Ass'n*, and *Addison Twp* have since been "overruled" by subsequent legislative amendments of the statutes at issue in those cases.

[4] MCL 125.271 *et seq.*; MSA 5.2963(1) *et seq.*

and Environmental Protection Act (NREPA),[5] which governs the DNR's activities here.[6]

### 1. TOWNSHIP ZONING AUTHORITY

The Legislature, through the TRZA, has granted significant authority to townships bearing on their right to regulate the use and development of boating and recreational facilities such as the one at issue. The TRZA broadly vests authority in townships to regulate land development "to meet the needs of the state's citizens for . . . recreation . . . and other uses of land . . . ." MCL 125.271(1); MSA 5.2963(1)(1). The TRZA further provides that zoning ordinances shall be based on a plan designed to, among other things, "conserve natural resources." MCL 125.273; MSA 5.2963(3).[7] Indeed, the status and force of this zoning

---

[5] MCL 324.101 et seq.; MSA 13A.101 et seq.

[6] We reject at the outset the DNR's claim that the Legislature, through part 301 of the NREPA, MCL 324.30101 et seq.; MSA 13A.30101 et seq., formerly the Inland Lakes and Streams Act, MCL 281.951 et seq.; MSA 11.475(1) et seq., has established in the DNR "an exclusive framework for the protection of the public trust in the waters of this [s]tate."

Const 1963, art 4, § 52 mandates that the Legislature conserve and develop the natural resources of the state and provides that such protection is of "paramount public concern in the interest of the health, safety and general welfare of the people." As fully explained below, the Legislature clearly has charged both the DNR, through the NREPA, and townships, through their statutory zoning power, with the protection of natural resources. Indeed, we recognized in Hess v West Bloomfield Twp, 439 Mich 550, 565; 486 NW2d 628 (1992), that

> by granting townships the authority to promote the public health, safety, and general welfare through enactment of zoning ordinances, the Legislature was complying with th[e] constitutional mandate to protect the environment, including bodies of water, from impairment or destruction.

[7] Reiterated in this section is the importance of zoning ordinances in meeting "the needs of the state's residents for . . . places of . . . recreation."

authority is enhanced by our state constitution. Const 1963, art 7, § 34 provides that statutory provisions relating to townships "shall be liberally construed in their favor."

In addition to the broad grant of regulatory authority contained in the TRZA, we also believe the township planning act (TPA), MCL 125.321 *et seq.*; MSA 5.2963(101) *et seq.*, to be particularly relevant in this case involving waterfront development. The TPA provides that a basic zoning plan shall show the planning commission's recommendations for the development of the township and include certain subjects pertinent to the future development of the township, including the general location, character, and extent of, among other things, "waterways and water front developments." MCL 125.327(2)(b); MSA 5.2963(107)(2)(b).

These statutory provisions reveal that the TRZA and the TPA provide townships with extensive authority to regulate the use and development of land within their borders, including waterfront property. Moreover, this Court in *Dearden* declined to adopt a rule that state agencies have inherent immunity from local zoning ordinances. *Dearden, supra* at 261. Thus, we conclude that it is incumbent upon the DNR to establish a clear legislative intent to exempt the DNR's activities from the Burt Township zoning ordinance.[8]

---

[8] The dissent takes issue with the "order" in which we address the relevant statutes. We believe our analysis to be consistent with *Dearden*. The dissent, on the other hand, would presume that the DNR, by virtue of its grant of authority under the NREPA, is exempt from local zoning ordinances unless a contrary intent is stated in the TRZA. This is tantamount to a rule of inherent immunity that *Dearden* expressly rejected.

2. THE DNR'S CLAIMED EXEMPTION FROM ZONING ORDINANCES

As the Court of Appeals noted, the DNR relies upon three NREPA provisions in support of its claim of immunity. The first is § 503, which provides in relevant part:

> The department shall protect and conserve the natural resources of this state [and] provide and develop facilities for outdoor recreation . . . . The department has the power and jurisdiction over the management, control, and disposition of all land under the public domain, except for those lands under the public domain that are managed by other state agencies to carry out their assigned duties and responsibilities. On behalf of the people of the state, the department may accept gifts and grants of land and other property and may buy, sell, exchange, or condemn land and other property, for any of the purposes contemplated by this part. [MCL 324.503(1); MSA 13A.503(1).]

Section 78105 further provides that the DNR "shall" have the following powers and duties:

> (a) To acquire, construct, and maintain harbors, channels, and facilities for vessels in the navigable waters lying within the boundaries of the state of Michigan.
>
> (b) To acquire, by purchase, lease, gift, or condemnation the lands, rights of way, and easements necessary for harbors and channels. . . .
>
> *     *     *
>
> (h) To charge fees for both daily and seasonal use of state-operated public access sites, if the cost of collecting the fees will not exceed the revenue derived from the fees for daily and seasonal passes. All revenues derived from this source shall be deposited in the Michigan state waterways fund. A seasonal pass shall grant the permittee the right to enter any state-operated public access site without

payment of an additional fee. [MCL 324.78105;    MSA
13A.78105.]

Finally, at the time that this case arose, § 78110 pro-
vided in pertinent part:

> The Michigan state waterways fund is created in the state
> treasury. The fund shall be administered by the state trea-
> surer and shall be used by the department solely for the
> construction, operation, and maintenance of recreational
> boating facilities, the acquisition of property for the pur-
> poses of this part, and for the administration of this part.
> The fund shall receive such revenues as the legislature may
> provide. [MCL 324.78110(1); MSA 13A.78110(1).][9]

The DNR maintains, and the dissenting Court of
Appeals judge agreed, that these various statutory
provisions evince a legislative intent that the DNR has
absolute authority to provide public access facilities
on inland lakes to the complete exclusion of munici-
pal zoning interests. However, we agree with the
Court of Appeals majority that, unlike the statute at
issue in *Dearden*, there is nothing in the NREPA that
similarly suggests a "clear expression" of legislative
intent to vest the DNR with exclusive jurisdiction over
its subject matter and thus to exempt the DNR's activi-
ties in this case from the Burt Township zoning
ordinance.[10]

---

[9] We note that the Legislature has since amended part 781 of the NREPA.
See 1998 PA 210. Because those amendments became effective on July 1,
1998, they are not applicable to this appeal.

[10] We agree with the observation made in the Court of Appeals dissent
that the NREPA "sets forth a comprehensive legislative scheme addressing
the protection, conservation, and development of the natural resources of
this state." 227 Mich App 262 (WHITE, J.). However, we do not accept the
dissent's conclusion that such a scheme is "inconsistent with the view that
a local unit of government can control public access through local zon-
ing." *Id.* at 263. The creation of a comprehensive regulatory scheme sim-

As an initial matter, we note that the *Dearden* Court found persuasive to its holding the fact that the statutes establishing the authority of the Department of Corrections explicitly stated that the department had "exclusive jurisdiction" over prison facilities. *Dearden, supra* at 265. Accordingly, Burt Township has argued that the absence of such a term in the NREPA is controlling. We reject this argument. While the presence of such terms as "exclusive jurisdiction" certainly would be indicative of a legislative intent to immunize the DNR from local zoning ordinances, we decline to require that the Legislature use any particular talismanic words to indicate its intent. The Legislature need only use terms that convey its clear intention that the grant of jurisdiction given is, in fact, exclusive. Whatever terms are actually employed by the Legislature, our task is to examine the various statutory provisions at issue and attempt to discern the legislative intent in enacting them.

The DNR places great emphasis on the mandatory nature of the duties expressed in the NREPA, as evidenced by the Legislature's repeated use of the term "shall," as well as the fact that the DNR is given the "power and jurisdiction" to manage and control lands under the public domain.[11] However, we are not persuaded that the Legislature, in directing that the DNR engage in certain governmental functions, intended that the DNR be authorized to do so in any manner it chooses. According the DNR "power and jurisdiction"

ply does not, standing alone, equal a grant of exclusive jurisdiction, particularly in light of townships' rival comprehensive regulatory power under the TRZA.

[11] "Public domain" is defined by statute merely as "all land owned by the state or land deeded to the state under state law." MCL 324.301(h); MSA 13A.301(h).

to manage land within its control is not the same as granting it *exclusive* jurisdiction. Thus, the fact that the DNR is mandated to create recreational facilities on public land it manages and controls does not indicate a legislative intent that the DNR may do so in contravention of local zoning ordinances.

We also find no particular significance in the fact that the TRZA does not expressly provide that state agencies are subject to zoning ordinances. As stated, this Court in *Dearden* declined to hold that state agencies are inherently immune from local zoning ordinances. *Id.* at 261. Nor was the *Dearden* Court persuaded by those foreign decisions finding immunity if, as here, the agency was granted the power of eminent domain. *Id.* Again, the issue is one "not of absolute governmental immunity, but rather of legislative intent." *Id.* at 265.

Further supporting our conclusion that the DNR is not immune from local ordinances enacted under the TRZA is the fact that the TRZA itself expressly exempts from local control or regulation "the drilling, completion, or operation of oil or gas wells" as well as the location of such wells. MCL 125.271(1); MSA 5.2963(1)(1). The TRZA instead vests jurisdiction over wells "exclusively in the supervisor of wells of this state . . . ." *Id.* The TRZA further exempts from zoning ordinances a "state licensed residential facility." MCL 125.286a; MSA 5.2963(16a). As such, the Legislature has demonstrated that it was aware of overriding land-use issues that warranted specific exemption from local regulation, but provided no such exemption for the DNR's activities. This fact provides additional assurance that there was no legislative intent to exempt the DNR here.

IV. CONCLUSION

In sum, the NREPA and the TRZA appear to provide coextensive statutory rights concerning the protection of natural resources in general and the development of recreation facilities and other waterfront developments in particular. Moreover, nothing in the NREPA establishes a clear expression of legislative intent to exempt the DNR's activities in this case from the Burt Township zoning ordinance. Accordingly, for all the reasons stated, we hold that the DNR, in the construction of its public-access boat launch, is subject to Burt Township's zoning ordinance. The decision of the Court of Appeals is affirmed.

WEAVER, C.J., and BRICKLEY, TAYLOR, and CORRIGAN, JJ., concurred with YOUNG, J.

CAVANAGH, J. I must respectfully dissent from the conclusion reached by the majority. While we are all in agreement in regard to the principles that form the basis for our analysis, I find the majority's application to be wanting, and fear that the effect of the majority's decision will be to wrest away from the Department of Natural Resources (DNR) a significant portion of its ability to comply with its legislatively issued mandate.

I

I agree with the Court of Appeals, the parties, and the majority, that *Dearden v Detroit,* 403 Mich 257, 264; 269 NW2d 139 (1978), provides the controlling test on this issue. Therein, we held that "the legislative intent, where it can be discerned, is the test for determining whether a governmental unit is immune

from the provisions of local zoning ordinances." *Id.*
Likewise, this question of law is subject to de novo
review. *Cardinal Mooney High School v Michigan
High School Athletic Ass'n*, 437 Mich 75, 80; 467
NW2d 21 (1991). Accordingly, I am able to concur
with the majority regarding parts I, II, and III(A) of its
analysis.

II

A

With respect to the application of the *Dearden* test,
however, I must part company with the majority. As
might be gathered from the "where it can be dis-
cerned" language of the *Dearden* test, determining the
intent of the Legislature in situations such as this is
often a difficult endeavor. While there are cases
where the Legislature has specifically excluded a gov-
ernmental unit from zoning provisions by including
such an exemption in the plain language of a statute,
the more common instance is the one that was found
in *Dearden* itself, where no facial exemption exists.
In such instances, we are forced to peruse both the
statutes relating to the governmental unit's function
and the statute that enables zoning to determine
whether one contains an implicit legislative grant of
superiority, or, alternatively, whether the two appear
coequal and thus must coexist.

B

As a benchmark to this endeavor, recall our find-
ings in *Dearden*. There, we found the statute relating
to the governmental unit (the Department of Correc-

tions, MCL 791.201 *et seq.*; MSA 28.2271 *et seq.*) to be "a clear expression of the Legislature's intent to vest the department with complete jurisdiction over the state's penal institutions . . . ." *Dearden* at 265. At the time, the statute included language that the "department shall have exclusive jurisdiction over . . . penal institutions . . . ." MCL 791.204; MSA 28.2274.

Conversely, this Court found persuasive the absence of any specific expression of legislative intent in the zoning enabling act to subject the department's exclusive jurisdiction to the various local zoning ordinances. In the absence of such an expression, the Legislature's grant of authority to the Department of Corrections was controlling.

C

Following *Dearden*'s example, the appropriate order for the application of that test to our facts would seem to be first to determine whether the Legislature has provided the department claiming exemption from local zoning ordinances a sufficient grant of authority that might support such a claim. Should that be the case, the next step would be to refer to the zoning enabling act to determine if a countervailing intent was present.[1]

---

[1] As might be gathered from this, I believe it more correct to analyze the issues in this order than the order in which the majority reviews them. I do not, however, suggest that the order in which the issues are analyzed would be determinative of the result reached in this case. Likewise, the determinative factor in this case for me is not, as the majority suggests, some sort of "presumption" along the lines rejected by *Dearden*, but rather a careful comparison of the provisions of the NREPA, TRZA and TPA. In viewing these, as required by *Dearden* to determine the Legislature's intent, I find, much as in *Dearden*, an expression of legislative intent in

The DNR's duties are outlined in § 503 of the Natural Resources and Environmental Protection Act (NREPA):

> The department shall protect and conserve the natural resources of this state; provide and develop facilities for outdoor recreation; . . . prevent and guard against the pollution of lakes and streams within the state and enforce all laws provided for that purpose with all authority granted by law . . . . The department has the power and jurisdiction over the management, control, and disposition of all land under the public domain, except for those lands under the public domain that are managed by other state agencies to carry out their assigned duties and responsibilities. On behalf of the people of the state, the department may accept gifts and grants of land and other property and may buy, sell, exchange, or condemn land and other property, for any of the purposes contemplated by this part. [MCL 324.503(1); MSA 13A.503(1).]

Also relevant, as acknowledged by the majority, is § 78105 of the NREPA:

> The department shall have the following powers and duties:
>
> (a) To acquire, construct, and maintain harbors, channels, and facilities for vessels in the navigable waters lying within the boundaries of the state of Michigan.
>
> (b) To acquire, by purchase, lease, gift, or condemnation the lands, rights of way, and easements necessary for harbors and channels. . . .
>
> *    *    *
>
> (h) To charge fees for both daily and seasonal use of state-operated public access sites, if the cost of collecting

---

the NREPA investing complete jurisdiction in the DNR, and nothing to the contrary in those portions of the TRZA and TPA the majority cites in support of its holding. This finding rests not on a view of "inherent immunity," but rather on the intent of the Legislature as expressed in these competing statutes.

the fees will not exceed the revenue derived from the fees for daily and seasonal passes. All revenues derived from this source shall be deposited in the Michigan state waterways fund. A seasonal pass shall grant the permittee the right to enter any state-operated public access site without payment of an additional fee. [MCL 324.78105;     MSA 13A.78105.]

Lastly, § 78110 provides:

The Michigan state waterways fund is created in the state treasury. The fund shall be administered by the state treasurer and shall be used by the department solely for the construction, operation, and maintenance of recreational boating facilities, the acquisition of property for the purposes of this part, for grants to local units of government to acquire and develop harbors of refuge and public boating access sites under section 78115, and for the administration of this part. The fund shall receive such revenues as the legislature may provide. [MCL 324.78110(1);     MSA 13A.78110(1).]

Thus these provisions, taken together, have the following import: first, the DNR is charged with providing outdoor recreation facilities and, in particular, with both the power and duty to construct harbors and channels for our navigable waterways; second, the DNR may expend funds or otherwise acquire property to accomplish this; and, third, the DNR may raise revenue, by access fees, to further accomplish the above purposes.[2]

---

[2] I pause to note that this case would seem to center on the DNR's charge to provide harbors and recreational facilities, rather than on its charge to protect the waterways. As the majority demonstrates, the latter issue can be seen, at the level of the DNR, to be a vestige of the Legislature's constitutional mandate to protect the natural resources, Const 1963, art 4, § 52, and another vestige of this mandate can be seen in the zoning enabling ordinances. *Hess v West Bloomfield Twp*, 439 Mich 550, 565; 486 NW2d 628 (1992). It is important to note, however, that, while *Hess* dealt

I further note that I agree with the majority that while *Dearden* involved a statute that granted "exclusive jurisdiction" to a department, that is not a mandatory bar that must be hurdled by a department claiming jurisdiction. The determinative factor is whether the Legislature's intent is clear from the statute as a whole, not whether any particular words are present within the statute. In this case, in viewing the various statutory enactments, I find a clear grant of broad-ranging authority to the DNR to provide and maintain access to our navigable waters, and further specific authority for the DNR to provide outdoor recreational facilities.

D

In viewing the Township Rural Zoning Act (TRZA), MCL 125.271 *et seq.*; MSA 5.2963(1) *et seq.*, and the township planning act (TPA), MCL 125.321 *et seq.*; MSA 5.2963(101) *et seq.*, and, in particular, the provisions cited by the majority, see *ante* at 665-666, I find only a general grant of power to regulate to meet recreational needs[3] and conserve natural resources,[4] as well as a provision that a township's basic zoning plan include subjects pertinent to the future development of the township, which may include, among other things, waterways and waterfront developments.[5]

with the applicability of a zoning ordinance to a pier constructed for mooring of boats, the pier and land it abutted were under private, as opposed to public, ownership, and thus the issue of a potential conflict between the zoning enabling ordinance and the NREPA was not present.

[3] MCL 125.271(1); MSA 5.2963(1)(1).

[4] MCL 125.273; MSA 5.2963(3).

[5] MCL 125.327(2)(b); MSA 5.2963(107)(2)(b). I would suggest, however, that a requirement that such pertinent subjects as waterways be included in the basic plan is not, on its face, any sort of enablement of

What I am unable to find in reviewing the TRZA and TPA is the exact thing that eluded the *Dearden* Court, an expression that either act was intended to subject the department's jurisdiction to provide access to waterways to the myriad local ordinances that exist, in widely varying degrees, throughout our state.

III

In *Dearden*, the Court noted with concern:

> If the department were subject to those ordinances, the underlying policies of the general correctional system could be effectively thwarted by community after community prohibiting the placement of certain penal institutions in appropriate locations. [403 Mich 267.]

That is exactly the case here. If the DNR is subject to zoning ordinances in each of the local municipalities that exist throughout the state, local communities could effectively prohibit the placement of public access sites within their communities, thus thwarting the DNR's performance of its legislatively mandated duty.

This case, on its face, would seem to provide an example of just such a danger. Burt Lake is one of Michigan's larger lakes, with, according to the DNR, over 16,700 surface acres. It is not disputed that currently public access to this lake consists of a seven-car/trailer site at one state campground, a twenty-three-car/trailer site at another state campground, and

---

zoning authority over such things. The actual question of the applicability of a local zoning ordinance to a navigable waterway is not before us, and hence I will refrain from further addressing this issue.

a number[6] of unimproved road endings that abut the lake.

The DNR claims that it has determined that a deficiency of public access facilities exists on the lake. The township disputes this. It would seem clear, however, that, currently, the DNR, by way of the access points at two state parks, is able to provide access to Burt Lake for thirty boats (the obvious corollary to car/trailer parking places provided at the access points). Some indeterminate number of other boats may be able to gain access from the unimproved roadway ends that abut the lake. In any event, it would seem that very few indeed of our state's citizens will be able, on any particular day, to access Burt Lake, unless, of course, they own private property on the lake.

The township lays claim to regulating, through zoning, the land that abuts the lake, while this as a general proposition, is within the authority granted by the TRZA, the effect of this application of zoning power, when applied to the DNR, could well be to frustrate the DNR's attempt to carry out its legislatively directed mandate to provide harbors, channels,[7] and recreation facilities.

The Court of Appeals and the majority suggest that the DNR is free to carry out its mandate, but that it must comply with the zoning regulation of the township. Given the posture of this case, the township has not yet had the opportunity to review an application

---

[6] While the parties do not offer an exact number, a review of the township's zoning map would suggest that, at least on paper, twelve road ends are marked as public access sites.

[7] We are informed by an amicus curiae that the proposed boat launch would entail the DNR dredging a 76 × 332 foot channel.

from the DNR and rule on it. The township's stated position before this Court is that the DNR's proposed access site would be reviewable as a "special land use." The record includes the township's zoning plan, which, in § 5.6, states that the planning commission shall have the "function, duty and power to approve or disapprove" an application for such a permit.

Consistent with its statutory mandate, the DNR has acquired 5.6 acres of land, which includes 362.3 feet of shoreline on Burt Lake. The effect of the majority's decision today is to remove from the DNR its ability to fulfill its legislatively mandated duty to provide access to the lake and, instead, to hinge the performance or nonperformance of that duty on the discretion of a local planning commission.[8] The navigable waterways of this state belong to all the citizens of this state.[9] The Legislature has charged the DNR with providing our citizens with access to their waterways. The Court today grants a local planning commission the ability to veto such endeavors and frustrate both the DNR's lawful activities and the ownership interest of the great majority of our citizens in their waterways.

While I am not unmindful of the interests of the township and its citizens in issues regarding access to the lake, and in effecting the underlying purposes of their zoning ordinance, such interests should not be elevated to a point where they might serve to frus-

---

[8] The record is not clear whether the members of the local planning commission are themselves elected by township citizens, or, alternatively, appointed by elected officials. In either event, it would seem fair to say that such officials are likely accountable to their constituency, the citizens of Burt Township.

[9] *Collins v Gerhardt*, 237 Mich 38; 211 NW 115 (1926).

trate the interests of the citizens of this state in their waterways, the DNR's ability to effect its mandate, and the Legislature's interest in seeing its mandate carried out. Within the text of the NREPA, I see no intent to subject the broad mandates of that act to the complete discretion of every local municipality, nor do I find evidence of such an intent in the TRZA or TPA. Furthermore, the Court's decision may well tend to negatively implicate the ability of the vast majority of our citizens to enjoy the waterways of this state.

KELLY, J., concurred with CAVANAGH, J.