**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED JULY 31, 2003**

CHARTER TOWNSHIP OF NORTHVILLE,

    Plaintiff,

and

No. 120213

HEATHER SCHULZ, JEFFREY SCHULZ;
MARY LOWE, GEORGE LOWE; ERIC
HANPETER, LAURA HANPETER; FRANK
CORONA, MARCELLA CORONA; DAVID
MALMIN, LEE ANN MALMIN; JOHN
MILLER, DEBRA MILLER; TOM
CONWELL, EVY CONWELL; MARY BETH
YAKIMA, DAN YAKIMA; RICHARD LEE,
PATTY LEE; BETH PETERSON, RICK
PETERSON; JOHN BUCHANAN; KEN
BUCHANAN; LARRY GREGORY, NANCY
GREGORY; K. MAUREEN WYNALEK,
JAMES WYNALEK; HAROLD W. BULGER
and SANDRA A. BULGER.

    Intervening-Plaintiffs,
    Appellants,

v

NORTHVILLE PUBLIC SCHOOLS,
SUPERINTENDENT OF NORTHVILLE
PUBLIC SCHOOLS, and NORTHVILLE
BOARD OF EDUCATION,

    Defendants-Appellees.

_____

BEFORE THE ENTIRE COURT

TAYLOR, J.

We granted leave to appeal to determine whether local school districts, which are required to submit building plans to the state superintendent of public instruction for approval pursuant to MCL 380.1263(3), must also comply with township zoning and planning ordinances pursuant to the Township Zoning Act, MCL 125.271 *et seq.*, and the township planning act, MCL 125.321 *et seq.* We conclude that because the text of MCL 380.1263(3) grants the state superintendent sole and exclusive jurisdiction over local school district construction and site plans, it immunizes school districts from local zoning ordinances affecting those functions. However, a majority declines to address whether this is an impermissible delegation of legislative power because the state superintendent is not a party to this suit.

Accordingly, a majority affirms in part and vacates in part the judgment of the Court of Appeals.

I

Before beginning construction of a new high school in Northville Township, the Northville Board of Education met with township officials to discuss the effect of local zoning ordinances on its site plan. Although somewhat productive, conflicts remained and the township sought to enjoin

2

construction.[1] The trial court denied a stay, but allowed nearby landowners to intervene as plaintiffs. After discovery, the township and intervening plaintiffs moved for summary disposition. The circuit court denied the motion on the basis of the text of MCL 380.1263(3), which grants sole and exclusive jurisdiction over school site plans to the state superintendent.

The intervenors appealed, and the Court of Appeals affirmed, holding that the text of the revised school code, MCL 380.1263(3), conveys a clear intention to grant "sole and exclusive jurisdiction" over site plans to the state superintendent. The Court also rejected intervenors' claim that the Legislature unconstitutionally delegated legislative authority to the state superintendent, concluding that the statute provides sufficient construction and design standards.[2]

We granted intervenors' application for leave to appeal.[3]

---

[1]After reviewing defendant's site plans, the township provided over ninety zoning-related recommendations. Defendant school district addressed each concern and complied with all but a handful of recommendations.

[2]Although the township also appealed separately, it then settled with the school district and that appeal was dismissed.

[3]467 Mich 896 (2002).

We review de novo decisions on summary-disposition motions. *Stanton v Battle Creek*, 466 Mich 611, 614; 647 NW2d 508 (2002). Similarly, we review de novo questions of statutory interpretation. *In re MCI,* 460 Mich 396, 413; 596 NW2d 164 (1999).

III

To determine whether local school districts are subject to township zoning and planning ordinances, we must examine the authority of the school district to develop school construction and site plans, with the approval of the state superintendent, under MCL 380.1263(3).

MCL 380.1263(3) states:

> The board of a school district shall not design or build a school building to be used for instructional or noninstructional school purposes or design and implement the design for a school site unless the design or construction is in compliance with [MCL 388.851 to 388.855a]. The superintendent of public instruction has *sole and exclusive jurisdiction* over the review and approval of plans and specifications for the construction, reconstruction, or remodeling of school buildings used for instructional or noninstructional school purposes and of site plans for those school buildings. [MCL 380.1263(3) (emphasis supplied).]

Of importance is that this subsection vests design and construction oversight authority over the district's decision in the state superintendent, who has "sole and exclusive jurisdiction . . . ."

The first step in construing a statute is to discern legislative intent. To do this requires review of the statutory text adopted by the Legislature. *House Speaker v State Administrative Bd,* 441 Mich 547, 567; 495 NW2d 539 (1993). If unambiguous, the Legislature will be presumed to have intended the meaning expressed, and the courts enforce that meaning without further judicial construction or interpretation. *Grievance Administrator v Underwood*, 462 Mich 188, 193-194; 612 NW2d 116 (2000). These rules control the disposition of this matter.

We determine that the statute here is unambiguous. It grants sole and exclusive jurisdiction to the state superintendent to review and approve plans and specifications of school buildings and site plans for those buildings. Thus, what the state superintendent approves is immune from the provisions of local zoning ordinances.

In *Dearden v Detroit*, 403 Mich 257, 264; 269 NW2d 139 (1978), a case concerning the authority of the Department of Corrections to locate prisons without regard to local zoning, in which the department was given exclusive jurisdiction concerning location, we found the words "exclusive jurisdiction" indicative that the department had, not surprisingly, exclusive jurisdiction. In later cases, apprehensive that this may have suggested a need for

5

"talismanic words," and that a court, not finding any, might conclude that the state agency was not immune from local zoning, we indicated in *Burt Twp v Dep't of Natural Resources*, 459 Mich 659, 669; 593 NW2d 534 (1999), that even in the absence of talismanic words the state agency may be immune if the Legislature's intent to immunize was otherwise clear. The thrust of this was that a court should look to the intent of the Legislature and not just do a word search. We recently discussed this again in *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich ___; ___ NW2d ___ (2003). We now come full circle. The fact that the Legislature does not have to use talismanic words does not mean that, if it does, they are to be disregarded. That is, *Burt Twp,* et al., should correctly be understood as recognizing an enlarged target for the Legislature, but it should not be read to say a bull's eye no longer counts. With that in mind, as explained below, we conclude that "sole and exclusive jurisdiction" means, again we hope not surprisingly, sole and exclusive jurisdiction.

We find the dictionary definitions dispositive. "Sole" means "[b]eing the only one; existing or functioning without another or others; only." *The American Heritage Dictionary of the English Language* (1981). Similarly, "exclusive" is defined as "not divided or shared with others [or] single or independent; sole." *Id*. The Legislature's choice of

6

modifiers reflects its intention to unambiguously vest "jurisdiction," i.e., "the general power to exercise authority," in the state superintendent. Black's Law Dictionary (7th ed).

This leaves to be determined the definition of "site plan." The dictionary defines "site" as "The place where something was, is, or is to be located," *The American Heritage Dictionary of the English Language* (1982), or similarly, "[T]he area or exact plot of ground on which anything is, has been, or is to be located . . . ." *Random House Webster's College Dictionary* (1997). "Plan" is defined as "A detailed scheme, program, or method worked out beforehand for the accomplishment of an object . . . . A proposed or tentative project or goal . . . ." *The American Heritage Dictionary of the English Language* (1982). Thus, it is apparent that the meaning of "site plan," with no qualifying modifiers, is the plan for everything on the property, i.e., the entire project.

This definition is consistent not only with the common understanding of the phrase but also with the Legislature's use of the term "site plan" in both the Township Zoning Act and the township planning act. The Township Zoning Act states that the proposal for the individual "site plan" of a property owner or user must be "in compliance with local ordinances and state and federal statutes." MCL 125.286e(1). If it is, the

7

township zoning authorities have the duty to approve it. Similarly, in the township planning act, the site plan must "comply with the [township's basic development] plan adopted under this section."  MCL 125.326(4).  If the site plan does comply, it is to be approved by the planning authorities. Thus, in both these acts the site plan, i.e., what is to be undertaken on the site, is presented to the appropriate zoning and planning authorities and, if consistent with the ordinance and plan, it is to be approved.

In a fashion similar to the procedure followed by individuals who wish to have their site plans approved by the zoning and planning authorities discussed above, the school district, under MCL 380.1263(3), must present its site plan to the state superintendent for approval.  Just as the township zoning authorities have duties to accept or reject the individual homeowner's site plan, so the state superintendent has similar duties to "review and approv[e]" the school district's site plans.

This understanding of MCL 380.1263(3) makes clear that the state superintendent's power is unaffected by any zoning or planning rules or ordinances regarding what goes on within the site itself.  While this may appear to be an extensive grant of authority, it is, in our view, no more so than, and indeed of a piece with, the authority given to the ultimate

8

reviewing authorities by the Township Zoning Act and the township planning act.

We also note that this interpretation is in harmony with the general structure of MCL 380.1263(3), in which the state superintendent is given distinct duties regarding both construction and site plans. Because the state superintendent must approve construction plans and, as a separate matter, approve site plans, we are led to the conclusion that the Legislature considered these two types of plans as not being identical. Thus, we conclude that it was the Legislature's view that "site plans" would not be coterminous with "construction plans." Our interpretation of the statute is consistent with this.

Further, it is important that neither the Township Zoning Act nor the township planning act by its terms requires school district compliance with zoning ordinances. Intervening plaintiffs correctly note that MCL 125.273 and 125.327(2)(a) clarify that township zoning ordinances and plans should be drafted to accommodate a community's educational needs. However, it does not necessarily follow that local school districts must comply with all township land-use controls prescribed by ordinance.[4]

---

[4]Intervening plaintiffs also assert that the Legislature, by not expressly exempting school districts from zoning

(continued...)

9

Intervenors further argue that "site plans" cannot extend beyond the construction of school buildings because the state superintendent's agents testified in the matter that they have no published standards for site design and do not review site plans for land-use matters. This argument has no merit. The purported failure to act on the part of the state superintendent's agents is not indicative of the Legislature's intent and cannot control the meaning of the statutes at issue. The intervenors' claim in this regard would be better understood as precipitating challenges to the administration of the statute rather than its meaning.

After considering all the above arguments and applying *Dearden,* it is our view that the Legislature clearly evidenced an intention to grant "sole and exclusive jurisdiction" over school construction and site plans to the state superintendent, thereby immunizing local districts from township zoning ordinances as they affect the content of the site plan itself. MCL 380.1263(3). Because nothing in either

---

(...continued)

regulations, as it had regarding certain gas and oil operations and electric transmission lines, should be held to have not intended to exempt school districts from zoning. MCL 125.271(1). However, as we noted in *Pittsfield Charter Twp v Washtenaw Co*, slip op at 13, this reads too much into these existing exceptions, which, by the nature and timing of their enactment, were the Legislature's attempt to coordinate other statutes with the Township Zoning Act, not to identify the only possible exceptions to a township's zoning authority.

10

the Township Zoning Act or the township planning act suggests an intent to usurp the state superintendent's "sole and exclusive jurisdiction" over design, construction, and siting requirements, we must conclude that local school districts for their site plans must seek only the state superintendent's approval and need not have the approval of township zoning and planning authorities.

IV

Intervening plaintiffs also argue that this act is unconstitutional because it is an impermissible delegation of legislative power to the state superintendent. For us to address whether this statute effects an impermissible delegation of legislative authority, it would have been necessary for the state superintendent to have been joined as a party pursuant to MCR 2.205(A). Because this did not take place, the issue is not properly before us and we decline to address the matter further. Similarly, the matter was not properly presented to the Court of Appeals and that Court's opinion, to the extent that it considered this issue, must be vacated.

V

As we read Justice Cavanagh's opinion, he agrees with us that MCL 380.1263(3) granted the state superintendent authority superseding township zoning ordinances for what goes

11

on within the site itself.    He would go further however, understanding the statute to mean that

> there is no reason to presume the state superintendent's review power over local school districts is necessarily limited to activities contained within the site itself. (*Post* at 4).

Thus, he concludes that

> it would be inappropriate to suggest that, even in some limited fashion local school districts should be subject to township zoning authorities.  (*Post* at 5).

Justice Weaver concurs with our approach to the authority of the superintendent stating that

> the text of MCL 380.1263(3) evidences a legislative intent to subject local school districts to the authority of the superintendent of public instruction, thus immunizing districts from township zoning ordinances.  (*Post* at 2).

Thus a clear majority of the Court agrees that the authority of the state superintendent pursuant to MCL 380.1263(3) is at least as broad as set forth in this opinion.

Justice Markman disagrees with us.   Under Justice Markman's interpretation of MCL 380.1263(3) the words "sole and exclusive jurisdiction" do not convey that the jurisdiction is sole and exclusive.  His view, we believe, is inconsistent with the Legislature's grant of "sole and exclusive jurisdiction over the review and approval" of the site plans as well as, were it the majority, an effective overruling of the line of cases commencing with *Dearden* and

12

including *Burt Twp*, *Byrne v Michigan,* 463 Mich 652; 624 NW2d 906 (2001), and most recently, *Pittsfield Twp.*[5]

As for plaintiffs' claim that MCL 380.1263(3) is unconstitutional because it is an inappropriate delegation of legislative power to the state superintendent, Justice Markman, while otherwise dissenting as we have mentioned, concurs with our position that to reach this issue the state superintendent should have been joined as a party. Justice Cavanagh, in his concurrence, only briefly addresses this issue without stating a preference for its resolution.

---

[5]Moreover, with respect to Justice Markman's concern that unfortunate consequences may flow from the state superintendent having such power, we do not share his apprehensions. Regarding the prospect of a school district recommending, and the state superintendent approving, plans that are in conflict with a community's interests, it is, of course, possible, but seems unlikely when one recalls that the local school district, the generator of the site plan, is controlled by a locally elected board. We believe they, as other unnamed elected officials in whom Justice Markman seems to have more confidence, can be expected to be sensitive to the local community interests. If they are not, there are the usual political remedies. In any event, assuming this is insufficiently reassuring, we fail to see why, as a general matter, these elected officials would be inherently less sensitive to local concerns than would be an appointive (that is, unelected) zoning board or planning commission. Further, reinforcing our conclusion in this regard is the fact that the state superintendent serves at the pleasure of yet another elected body, the State Board of Education. Thus, we believe the statute, as we have construed it, will produce fewer discordant outcomes with local wishes than can be expected under Justice Markman's approach. If, however, this is not the case, it is within the Legislature's power to simply change the process to have ultimate authority rest with appointed zoning boards and planning authorities.

13

Justice Weaver, however, reaches the delegation question and finds no improper delegation. Accordingly, with others joining this plurality, a clear majority of the Court agrees that the failure to join the state superintendent as a party precludes us from resolving the claim that MCL 380.1263(3) is an unconstitutional delegation of legislative power.

VI

In the present case, the Legislature vested "sole and exclusive jurisdiction" over school construction and site plans in the state superintendent of public instruction, who has the approval authority for school construction and site plans submitted by the local school districts. This unambiguous language, when viewed in light of the zoning authority granted to townships in the township zoning and planning acts, indicates an intention to immunize school districts from local ordinances as they affect the content of a school site plan. Further, the issue of delegation of legislative authority to the state superintendent is not properly before us, and a majority declines to consider it. For these reasons, with others joining this plurality, the Court affirms the judgment of the Court of Appeals dismissing the intervening plaintiffs' appeal after the denial of their motion for summary disposition and the Court vacates those portions of the opinion of the Court of Appeals that address

14

the issue of delegation of legislative authority to the state
superintendent of public instruction.

                              Clifford W. Taylor
                              Maura D. Corrigan
                              Robert P. Young, Jr

CHARTER TOWNSHIP OF NORTHVILLE,

    Plaintiff,

and                                 No. 120213

HEATHER SCHULZ, JEFFREY SCHULZ;
MARY LOWE, GEORGE LOWE; ERIC
HANPETER, LAURA HANPETER; FRANK
CORONA, MARCELLA CORONA; DAVID
MALMIN, LEE ANN MALMIN; JOHN
MILLER, DEBRA MILLER; TOM
CONWELL, EVY CONWELL; MARY BETH
YAKIMA, DAN YAKIMA; RICHARD LEE,
PATTY LEE; BETH PETERSON, RICK
PETERSON; JOHN BUCHANAN; KEN
BUCHANAN; LARRY GREGORY, NANCY
GREGORY; K. MAUREEN WYNALEK,
JAMES WYNALEK; HAROLD W. BULGER
and SANDRA A. BULGER.

    Intervening-Plaintiffs,
    Appellants,

v

NORTHVILLE PUBLIC SCHOOLS,
SUPERINTENDENT OF NORTHVILLE
PUBLIC SCHOOLS, and NORTHVILLE
BOARD OF EDUCATION,

    Defendants-Appellees.
_____

CAVANAGH, J. (*concurring*).

I agree with the lead opinion's conclusion that an evaluation of MCL 380.1263(3)[1] indicates a legislative intent to subject local school districts to the authority of the state superintendent, thereby immunizing districts from township zoning ordinances. However, I must concur in the result only.

Above all, I am troubled by the lead opinion's suggestion that the state superintendent's power to review a local school district's site plan is limited to "what goes on within the site itself." *Ante* at 7. In drafting MCL 380.1263(3), the Legislature indicated no such restriction on the superintendent's authority. As the lead opinion clearly states, the statute provides the state superintendent with "sole and exclusive jurisdiction" over "site plans." MCL 380.1263(3).

This interpretation accords with the events leading up to the statute's revision. In response to several Court of

---

[1] Portions of the school construction code, MCL 388.851 *et seq.*, have been revised by 2002 PA 628. Without amending the grant in MCL 380.1263(3) of "sole and exclusive jurisdiction over . . . site plans" to the superintendent of public instruction, the act transfers the authority to enforce construction codes from one state entity, the superintendent, to the Department of Consumer and Industry Services. Because this case arose before 2002 PA 628 was enacted, we need not decide whether the revisions alter the scope of the superintendent's authority.

Appeals cases mandating local school district compliance with township ordinances,[2] the Legislature amended subsection 1263(3) and extended state oversight authority to include "site plans for those school buildings." 1990 PA 159. Interpreting the 1990 amendment in a manner that gives a distinct meaning to "site plans" requires an acknowledgment that "site plans" contain data other than that strictly necessary for "the construction of . . . school buildings . . . ."

Further, although the term "site plans" is not defined in the revised school code, the Legislature's practice of employing the term in zoning statutes suggests its utility as a tool to measure compliance with land-use regulations.[3]

---

[2] *Lutheran High School Ass'n v Farmington Hills,* 146 Mich App 641; 381 NW2d 417 (1985) (subjecting private school to local zoning ordinances); *Cody Park Ass'n v Royal Oak School Dist*, 116 Mich App 103; 321 NW2d 855 (1982) (holding that the power of a school district to acquire property did not exempt it from local zoning ordinances).

[3] MCL 125.286e(1) provides:

As used in this section, "site plan" includes the documents and drawings required by the zoning ordinance to insure that a proposed land use or activity is in compliance with local ordinances and state and federal statutes.

See also MCL 125.326.

Unlike the lead opinion, I disagree that the American Heritage Dictionary should be used to define "site plan." As noted above, the phrase is a term of art in the fields of, inter alia, zoning, construction, and planning, i.e., a "site

(continued...)

3

Hence, it is reasonable to assume that the superintendent's exclusive jurisdiction over site plans would include the authority to review and approve land-use controls for the promotion of community health, safety, and welfare. See, e.g., MCL 125.271(1) ("the township board of an organized township in this state may provide by zoning ordinance . . . to promote public health, safety, and welfare."). Therefore, while we require no "talismanic words," the legislative grant of "sole and exclusive jurisdiction" unambiguously indicates a legislative intent to vest comprehensive and undivided control over both school construction plans and site plans in the state superintendent, which includes land-use oversight authority. From this broad grant of power, there is no reason to presume the state superintendent's review power over local school districts is necessarily limited to activities contained within the site itself.

In this case, for example, plaintiff requested a "traffic impact study to evaluate peak hour movement." Certainly, the relevant traffic patterns with which the township was

---

[3](...continued)
plan" refers to the specifications required for the task assigned. See MCL 8.3a ("technical words and phrases . . . shall be construed and understood according to such peculiar and appropriate meaning"). See also *Production Credit Ass'n of Lansing v Dep't of Treasury*, 404 Mich 301, 312; 273 NW2d 10 (1978) ("terms of art" should be interpreted "in accordance with the experience and understanding of those who would be expected to use and interpret the act").

4

concerned included activities not contained exclusively within the site itself. Although accommodations for such concerns would normally be (and were) included within the site plan, § 1263(3) indicates no particular land-based limit to the state superintendent's oversight authority, as the lead opinion suggests. Rather, the state superintendent has "sole and exclusive jurisdiction" over "site plans," which reasonably includes the authority to review land-use controls designed for zoning purposes. MCL 380.1263(3). Given that this textual indicator of legislative intent, it would be inappropriate to suggest that, even in some limited fashion, local school districts should be subject to township zoning authorities.

Further, the lead opinion comments upon the "standards" to which the state superintendent must submit itself and the adequacy with which state agents are able to enforce those standards in part III, *ante* at 9, but continues by refusing to reach the merits of plaintiff's delegation-of-power claim in part IV. Because of the lead opinion's position regarding plaintiff's failure to join the superintendent as a party and its refusal to rule on the adequacy of the standards delegated by the Legislature, I would, had I chosen to join the lead opinion's position, refrain from all unnecessary commentary in part III.

5

In sum, while I agree that *Dearden v Detroit,* 403 Mich 257; 269 NW2d 139 (1978), requires the rejection of plaintiffs' claim in light of the "sole and exclusive authority" granted to the state superintendent in MCL 380.1263(3), I respectfully concur in the result only for the reasons noted above.

Michael F. Cavanagh
Marilyn Kelly

S T A T E   O F   M I C H I G A N

SUPREME COURT



CHARTER TOWNSHIP OF NORTHVILLE,

    Plaintiff,

and                          No. 120213

HEATHER SCHULZ, JEFFREY SCHULZ;
MARY LOWE, GEORGE LOWE; ERIC
HANPETER, LAURA HANPETER; FRANK
CORONA, MARCELLA CORONA; DAVID
MALMIN, LEE ANN MALMIN; JOHN
MILLER, DEBRA MILLER; TOM
CONWELL, EVY CONWELL; MARY BETH
YAKIMA, DAN YAKIMA; RICHARD LEE,
PATTY LEE; BETH PETERSON, RICK
PETERSON; JOHN BUCHANAN; KEN
BUCHANAN; LARRY GREGORY, NANCY
GREGORY; K. MAUREEN WYNALEK,
JAMES WYNALEK; HAROLD W. BULGER
and SANDRA A. BULGER.

    Intervening-Plaintiffs,
    Appellants,

v

NORTHVILLE PUBLIC SCHOOLS,
SUPERINTENDENT OF NORTHVILLE
PUBLIC SCHOOLS, and NORTHVILLE
BOARD OF EDUCATION,

    Defendants-Appellees.
_____

**WEAVER, J.** *(concurring in result).*

I concur in the result of the lead opinion because the text of MCL 380.1263(3) evidences a legislative intent to subject local school districts to the authority of the state superintendent of public instruction, thus immunizing districts from township zoning ordinances.[1] This conclusion is consistent with the general understanding of the term "site plan," as that term is used in the Township Zoning Act, MCL 125.271 *et seq.,*[2] as well as the general understanding of the phrase "sole and exclusive jurisdiction."

I write separately because not persuasive is the lead opinion's position that it is "necessary" to join the state

---

[1] MCL 380.1263(3) provides:

> The board of a school district shall not design or build a school building to be used for instructional or noninstructional school purposes or design and implement the design for a school site unless the design or construction is in compliance with [MCL 388.851 to 388.855a]. *The superintendent of public instruction has sole and exclusive jurisdiction over the review and approval of plans and specifications for the construction, reconstruction, or remodeling of school buildings used for instructional or noninstructional school purposes and of site plans for those school buildings.* [Emphasis added.]

[2] The Township Zoning Act provides:

> As used in this section, "site plan" includes the documents and drawings required by the zoning ordinance to insure that a proposed land use or activity is in compliance with local ordinances and state and federal statutes. [MCL 125.286e(1).]

2

**superintendent as a party before addressing the intervening plaintiffs' argument concerning the improper delegation of legislative authority.**[3]  **Rather, applying the guidelines articulated in** *Dep't of Natural Resources v Seaman,* **396 Mich 299; 240 NW2d 206 (1976),**[4] **I would conclude that the act does**

[3] MCR 2.205(A) states that "persons having such interests in the subject matter of an action that their presence in the action is essential to permit the court to render complete relief must be made parties . . . ."  The superintendent's presence is not essential to permit the Court to render complete relief on the issue concerning the constitutionality of the statute, where the conclusion is that the statute is constitutional and the superintendent would not be arguing against the constitutionality of the statute.  Additionally, I note that none of the parties moved to join the superintendent at any stage of the proceedings, and the Attorney General declined to file a brief amicus curiae on the superintendent's behalf, despite this Court's invitation to do so.  This Court's grant order stated:

> Leave to file briefs amici curiae is granted. The Attorney General is invited to file a brief amicus curiae on behalf of the Superintendent of Public Instruction. [467 Mich 896 (2002).]

Moreover, were the superintendent a party whose presence was essential under MCR 2.205, MCR 2.207 authorizes the Court to add parties at any stage of the proceeding, even on appeal. 2 Dean & Longhofer, Michigan Court Rules Practice, p 97.  See also *Henkel v Henkel*, 282 Mich 473, 488; 276 NW 522 (1937) ("And, ordinarily, if the proper parties plaintiff are not joined, this court will direct the joinder of the proper parties plaintiff on appeal." [Citations omitted.]).

[4] The rule concerning delegation states:

> "The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend.  To deny this would be to stop the wheels of government." [*Seaman, supra* at 308,
>                                         (continued...)

3

not constitute an impermissible delegation of legislative authority because the Revised School Code provides sufficient standards to guide the superintendent's discretion.

For these reasons, I concur in the result of the lead opinion.

                                        **Elizabeth A. Weaver**

---

[4](...continued)
quoting *Locke's Appeal*, 72 Pa 491, 498-499 (1873).]

*Seaman* offers the following criteria for determining whether a statute provides sufficient standards: (1) the act in question must be read as a whole when determining whether the provision at issue provides sufficient standards, (2) "the standard should be 'as reasonably precise as the subject matter requires or permits'", (quoting *Osius v St Clair Shores,* 344 Mich 693, 698; 75 NW2d 25 [1956])and (3) when possible, the statute must be construed in a manner that renders it valid rather than invalid. *Id.* at 309.

CHARTER TOWNSHIP OF NORTHVILLE,

    Plaintiff,

and                                  No. 120213

HEATHER SCHULZ, JEFFREY SCHULZ;
MARY LOWE, GEORGE LOWE; ERIC
HANPETER, LAURA HANPETER; FRANK
CORONA, MARCELLA CORONA; DAVID
MALMIN, LEE ANN MALMIN; JOHN
MILLER, DEBRA MILLER; TOM
CONWELL, EVY CONWELL; MARY BETH
YAKIMA, DAN YAKIMA; RICHARD LEE,
PATTY LEE; BETH PETERSON, RICK
PETERSON; JOHN BUCHANAN; KEN
BUCHANAN; LARRY GREGORY, NANCY
GREGORY; K. MAUREEN WYNALEK,
JAMES WYNALEK; HAROLD W. BULGER
and SANDRA A. BULGER,

    Intervening-Plaintiffs,
    Appellants,

v

NORTHVILLE PUBLIC SCHOOLS,
SUPERINTENDENT OF NORTHVILLE
PUBLIC SCHOOLS, and NORTHVILLE
BOARD OF EDUCATION,

    Defendants-Appellees.

_____

MARKMAN, J. (*dissenting*).

I respectfully dissent. A majority of the Court affirms in part the judgment of the Court of Appeals, concluding that MCL 380.1263(3) evidences a legislative intent to immunize school districts from local zoning ordinances that affect the content of school site plans. I disagree with the majority's conclusion that the language in this statute according the state superintendent of public instruction (superintendent) "sole and exclusive jurisdiction" to review and approve "site plans" for school buildings permits the superintendent to determine what may be placed on a site without regard to local zoning ordinances. Because, in my judgment, there is no clear legislative intent in MCL 380.1263(3) to exempt school districts from local zoning ordinances, I would reverse the judgment of the Court of Appeals.

## I. THE *DEARDEN* TEST AND RELEVANT CASES

As this Court indicated in *Dearden v Detroit*, 403 Mich 257, 264; 269 NW2d 139 (1978), "legislative intent, where it can be discerned, is the test for determining whether a governmental unit is immune from the provisions of local zoning ordinances." In *Dearden*, this Court considered a statute granting the Department of Corrections "exclusive jurisdiction" over penal institutions, MCL 791.204, and determined that the statutory scheme demonstrated a

2

legislative intent to grant the department immunity from local zoning ordinances in the establishment of state penal institutions.  *Dearden*, *supra* at 265-267.

Subsequently, in *Burt Twp v Dep't of Natural Resources*, 459 Mich 659; 593 NW2d 534 (1999), this Court concluded that the Department of Natural Resources was required to comply with a local zoning ordinance when constructing a public boat launch.  Although the Legislature granted the department "power and jurisdiction over the management, control, and disposition of all land under the public domain, except for those lands . . . that are managed by other state agencies," MCL 324.503(1), other statutes granted the township extensive regulatory authority over land use, including waterfront land use.  We noted that the burden was on the department to demonstrate a "clear legislative intent" to exempt the department from the township's zoning ordinances.  Nothing in the statutes in that case indicated a "clear expression" of legislative intent to grant the department exclusive jurisdiction or to exempt the department from the township's zoning ordinance.  *Burt Twp*, *supra* at 668.

More recently, in *Byrne v Michigan*, 463 Mich 652, 660-61; 624 NW2d 906 (2001), this Court concluded that the Legislature clearly expressed its intent to grant the Michigan State Police exclusive authority, not subject to any local zoning

3

ordinances, over the siting and construction of a communications tower. The statute at issue there, MCL 28.282(2), specifically required that the local zoning authority be notified of the site selected and set out a procedure to be followed in the event that the selected site failed to comply with local zoning, with the result that if any dispute could not be resolved, the department could proceed with construction.[1] Thus, the statute amounted to a "clear expression" of the Legislature's intent to invest the state police with full authority over the construction of the tower. *Id*. at 661.

## II. ANALYSIS

For the following reasons, which will be discussed in more detail below, I do not believe that MCL 380.1263(3)

---

[1] MCL 28.282(2) provides:

In siting the buildings and equipment necessary to implement the Michigan public safety communications system, the director of the department of state police shall locate the system, a local unit of government with zoning authority shall be notified of a site selected in their jurisdiction and the requirements necessary for a site. If the selected site does not comply with zoning, the local unit shall have 30 days from the date of notification to grant a special use permit or propose an equivalent site. If the local unit does not grant a special use permit within the 30 day period, or a proposed alternate site does not meet the siting requirements, the department may proceed with construction.

4

evidences a legislative intent, much less a "clear" legislative intent, *Burt*, *supra* at 666, to equate the state superintendent's authority over school site plans with the general power to act as a statewide zoning official. First, authority over site plans is wholly distinct from authority over zoning and land-use matters. Second, MCL 380.1263(3) fails to reference zoning, an inexplicable failure if the purpose of this provision was to confer zoning authority upon a public official. Third, the Township Zoning Act, MCL 125.321 *et seq.*, sets forth a contrary understanding of the zoning and land-use authority of local officials. As a result, under the test set out in *Dearden*, in which this Court declined to adopt a rule that state agencies have inherent immunity from local zoning ordinances, there is no evidence of a "clear legislative intent," *Burt*, *supra* at 666, to provide the superintendent with zoning authority and thereby immunize school districts from township zoning ordinances.

### A. SITE PLAN AUTHORITY DISTINCT FROM ZONING AUTHORITY

Determining whether the Legislature intended to exempt local school districts from township zoning affecting site plans for schools requires an examination of the relevant portion of the Revised School Code, MCL 380.1263(3), which provides:

> The board of a school district shall not design or build a school building to be used for

instructional or noninstructional school purposes or design and implement the design for a school site unless the design or construction is in compliance with [MCL 388.851 to 388.855a, the construction of school buildings act]. The superintendent of public instruction has sole and exclusive jurisdiction over the review and approval of plans and specifications for the construction, reconstruction, or remodeling of school buildings used for instructional or noninstructional school purposes and of site plans for those school buildings.

As the lead opinion recognizes, this provision requires local school boards to comply with the construction of school buildings act and grants the state superintendent "sole and exclusive jurisdiction" to review and approve "plans and specifications for the construction, reconstruction, or remodeling of school buildings" and "site plans for those school buildings."

I agree with the lead opinion that the references in MCL 380.1263(3) to both construction plans and site plans indicate that the Legislature viewed site plans as meaning something different from construction plans. Like the lead opinion, I believe that a site plan essentially comprises "the plan for everything on the property." *Ante* at 6. As the lead opinion acknowledges, a site plan reflects "what is to be undertaken on the site," *ante* at 7, and amounts to a proposal. This is supported by the description of site plans given in MCL 125.286e(1):

As used in this section, "site plan" includes

6

the documents and drawings required by the zoning ordinance to insure that a *proposed land use* or activity is in compliance with local ordinances and state and federal statutes. [Emphasis added.[2]]

Site plans thus can be reasonably understood as consisting of written and illustrative documents that set forth the proposed layout of a site and that are used to ensure compliance with local zoning regulations.

Although I do not disagree with the lead opinion's general characterization of site plans, I disagree with its conclusion that the superintendent's authority over site plans is "unaffected by any zoning or planning rules or ordinances regarding what goes on within the site itself." *Ante* at 10. As the lead opinion recognizes, a "plan" is a proposal that is tentative in nature and is not, by definition, a final decision. *Ante* at 6. Recognizing this meaning, it is clear, in my judgment, that the authority granted to the superintendent in MCL 380.1263(3) relates only to the approval of *proposals* for what *might be* built, or what the school district would like to have built, on the school site, and is not the equivalent of authority to undertake final zoning or

---

[2] See also the township planning act, MCL 125.326(4):

> After adoption of a plan under this section, a site plan for a property located in the plan area that is required to be submitted under section 16e of the township zoning act [MCL 125.286e] shall comply with the plan adopted under this act.

7

land-use decisions.  The lead opinion, however, construes MCL 380.1263(3), as empowering the superintendent to effect final zoning and land-use decisions regarding the placement of buildings and facilities on school sites.  In contrast, I believe that the superintendent's authority extends under the statute only to the final review and approval of the *proposed* layout—that is the "site plan"—for the school building.  The statute authorizes the superintendent to finally review and approve the *plan* for the school site.  However, local authorities, consistently with MCL 125.286e(1), are authorized to utilize the site plan as a means for ensuring  that the proposed land use by the superintendent complies with local zoning ordinances.[3]

The superintendent's authority over site plans is not the equivalent of zoning or land-use authority, but it is an authority in support of, an authority that informs, the exercise of zoning authority by local officials.  A site plan is a tool that ensures compliance with zoning; it is not merely substitute nomenclature for describing the zoning and

---

[3] To illustrate this point, consider the situation of an individual planning to build a new house.  Although the individual might have "sole and exclusive" authority to review and approve a site plan for the house, as between the individual and the builder and neighbors, this does not mean that the site plan is exempt from applicable local zoning ordinances. Local zoning authorities are still empowered to examine the site plan in order to ensure that the proposed use complies with local zoning requirements.

8

land-use processes.[4]

### B. ABSENCE OF REFERENCE TO ZONING

It is noteworthy that MCL 380.1263(3) is not a zoning or land-use statute at all and nowhere does it refer to zoning or land-use authority.  Rather, this provision is located within Part 16 of the Revised School Code, which concerns the general powers and duties of boards of education.  As discussed in the preceding subsection, the statute grants the superintendent sole and exclusive jurisdiction to review and approve site plans for school buildings, but nowhere empowers the superintendent to make final zoning or land-use decisions, even as they relate to school site plans.  This omission is particularly significant in light of the level of specificity with which the provision otherwise describes the superintendent's jurisdiction.  Under MCL 380.1263(3), the superintendent possesses jurisdiction over "plans" and "specifications" for the "construction," the "reconstruction," and the "remodeling" of schools, as well as for the "site

---

[4] The lead opinion's assertion that I view the township's authority under MCL 380.1263(3), as "not only concurrent with, but also superior to" the superintendent's authority, *ante* at 11, misapprehends this dissent.  Rather, the respective authorities of these entities are simply different.  That the President, for example, may veto legislation enacted by the Congress does not make his veto authority either "concurrent" with or "superior" to the legislative authority of the Congress.  It is simply a different authority whose exercise may have an effect on the authority of the Congress.

9

plans," of certain school buildings. However, nowhere in this provision is there any mention of jurisdiction concerning zoning or land-use planning, both of which are subject to regulation under entirely separate statutes. This is hardly surprising, considering that subsection 1263(3) is part of a school code and not a part of a zoning or land-use statute.[5]

Despite the lack of any statutory reference to zoning or land-use authority, the lead opinion construes subsection 1263(3) as replacing the authority of local officials in this realm with that of the superintendent. It reaches this conclusion with little substantive analysis, instead simply assuming that the Legislature, by granting the superintendent certain enumerated powers, intended to grant him unenumerated powers as well.[6] Yet, in my judgment, it is difficult to conceive that the Legislature would have conferred zoning and land-use authority upon the superintendent by implication, and that it would have set forth with specificity an enumeration

_____

[5] Given its placement in Michigan statutory law, it is quite likely that the legislative intention underlying MCL 380.1263(3) was merely to recognize the superintendent as the final authority *within the school system* empowered to review and approve construction plans and site plans for school buildings.

[6] This is reflected in part by the lead opinion's apparent conclusion that the state superintendent may preempt *some* local zoning and land-use regulations, but not others. Absent any reference to zoning or land-use authority in the statute, it is hard to understand how the lead opinion draws a distinction between zoning that is preempted and zoning that is not preempted.

10

of lesser authorities and yet intended to grant a greater authority despite failing to specify that greater authority. Further, it is difficult to conceive that the Legislature would have intended to deprive communities throughout the state of one of their most fundamental powers, the power to zone and regulate land use, through such indirection.[7] In the absence of any indication in MCL 380.1263(3), clear or otherwise, that the superintendent is not required to comply with local zoning and land-use regulations, I believe that such compliance is required. There is nothing in that statute that authorizes the superintendent to act in disregard of the zoning and land-use decisions made by local communities throughout this state.

## C. Township Zoning Act

The lead opinion's interpretation of MCL 380.1263(3) is further refuted by the Township Zoning Act, pursuant to which township boards are authorized to regulate in a very broad

---

[7] The Legislature has hardly shown itself incapable of, or disinclined to, expressly use "zoning" when that was its intention. A simple word check of the Michigan statutory law indicates that the Legislature has used the term on at least several hundred occasions when it wished to reference such authority. Yet, in the view of the lead opinion, the Legislature, **through MCL 380.1263(3), conferred authority over zoning upon an unelected state official, in derogation of the authority possessed by the people of communities throughout the state, in a realm (i.e., schooling) that likely would effect every one of these communities, without happening to mention "zoning."**

11

manner land uses and development within their boundaries, including regulation of the location and size of buildings.[8] Moreover, MCL 125.271 specifically allows townships "to facilitate adequate and efficient provision for . . . education . . . ." Similarly, MCL 125.273 provides:

> The zoning ordinance shall be based upon a plan designed to . . . facilitate adequate

---

[8] With regard to land-use regulation by townships, MCL 125.271(1) states:

> The township board of an organized township in this state may provide by zoning ordinance for the regulation of land development and the establishment of districts . . . which regulate the use of land and structures; to meet the needs of the state's citizens for food, fiber, energy, and other natural resources, places of residence, recreation, industry, trade, service, and other uses of land; to insure that use of the land shall be situated in appropriate locations and relationships; to limit the inappropriate overcrowding of land and congestion of population, transportation systems, and other public facilities; to facilitate adequate and efficient provision for transportation systems, sewage disposal, water, energy, education, recreation, and other public service and facility requirements; and to promote public health, safety, and welfare . . . . The township board of an organized township may use this act to provide by ordinance for the regulation of land development . . . . Ordinances regulating land development may also be adopted designating or limiting the location, the height, number of stories, and size of dwellings, buildings, and structures that may be erected or altered . . . , and the specific uses for which dwellings, buildings, and structures . . . , may be erected or altered; the area of yards, courts, and other open spaces, and the sanitary, safety, and protective measures that shall be required for the dwellings, buildings, and structures . . . .

provision for a system of transportation, sewage disposal, safe and adequate water supply, education, recreation, and other public requirements . . . .

These provisions generally recognize the zoning and land-use authority of townships, as well as the specific role of zoning and land-use authority in promoting a system of education. Because the Legislature has authorized township boards to comprehensively regulate land use, and has specifically authorized townships to enact zoning ordinances in order to provide for the area's education requirements, I do not believe that the superintendent's authority under MCL 380.1263(3) can reasonably be construed to displace all local zoning and land-use ordinances that, in any way, "affect" school site plans. The breadth of the Township Zoning Act is inconsistent with the notion that the Legislature would have compromised this authority through statutory silence and indirection.

Given the integrated and coordinated nature of most zoning and land-use plans, in which the whole is affected by the part, the conferral of authority upon the superintendent to disregard local regulations concerning school sites carries with it a potential effect reaching far beyond these sites. In communities throughout the state, the most carefully considered and finely coordinated zoning and land-use plan will now potentially be subject to the disruptiveness of a

13

contrary zoning or land-use decision made by the superintendent. Moreover, such a decision will be one undertaken by an unelected official who, almost certainly, will possess less familiarity with the needs and circumstances of these communities, and who will be less responsive to the people of these communities, than their own local officials.

### III. APPLICATION OF THE *DEARDEN* TEST

In *Dearden*, *supra* at 265, the statute at issue granted the Department of Corrections "exclusive jurisdiction" over penal institutions. The statute indicated that it was intended to repeal other provisions of law that were inconsistent with the department's administration of the penal system and indicated that the Michigan Corrections Commission was to address "'all matters relating to the unified development of the penal institutions . . . of the state . . . .'" *Id*. at 266 quoting MCL 791.202(1). The statute thus evidenced a legislative intent to immunize the department "from local zoning ordinances when establishing state penal institutions." *Id*. at 267.

In my judgment, the circumstances involved in *Dearden* materially differ from the circumstances in this case. Although, like the statute in *Dearden*, subsection 1263(3) contains "exclusive jurisdiction" language, the exclusive jurisdiction applies specifically to "the review and approval

14

of plans and specifications for the construction, reconstruction, or remodeling of school buildings" and "site plans for those school buildings." This language, in my view, reflects an intent to grant the state superintendent a more limited authority that relates specifically to the oversight of construction and site plans for particular school buildings. Whereas the statutory scheme in *Dearden* reflected a legislative intent to provide the Department of Corrections with broad authority to oversee and develop a statewide *system* of penal institutions, the relevant statute here reflects an intent to empower the superintendent to oversee a much narrower area relating to construction and site plans for school buildings. This is not surprising in view of the fact that principal authority over schools, unlike prisons, has traditionally reposed with local communities.[9]

In regard to the application of the *Dearden* test, this Court indicated in *Burt Twp*, *supra* at 666, that the party claiming to be exempt must show "a clear legislative intent" to exempt the particular activities from local zoning. The

---

[9] Compare, also, the specificity and concreteness of MCL 46.11, considered in *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich ___; ___ NW2d ___ (2003), which states that a county board of commissioners may "*[d]etermine* the site of, remove, or *designate* a new site for a county building," MCL 46.11(b), and "*[e]rect* the necessary buildings for jails, clerks' offices, and other county buildings, and prescribe the time and manner of erecting them," MCL 46.11(d) (emphasis supplied).

15

lead opinion effectively inverts this test, asserting that the statutes pertaining to township zoning and planning do not expressly require school districts to comply with local zoning regulations.  *Ante* at 9-10.  However, given the broad land-use authority that the Legislature has granted to townships, it would hardly be expected that these statutes would also affirmatively enumerate those entities obligated to comply with their zoning requirements.   To assume otherwise is to suggest that, unless express compliance is mandated, then compliance is not required.  Following this reasoning to its logical conclusion, one would have to assume that no entity must comply with local zoning authority because no such entities are listed.  The lead opinion's analysis improperly shifts the burden to the township to demonstrate that its generally applicable zoning and land-use regulations are applicable to a particular entity.

In my judgment, the school district, the party claiming exemption, has not met its burden.  Rather, the relevant statutory provisions do not evidence a "clear legislative intent" to immunize local school districts from local zoning ordinances.

IV.  Consequences of the Majority holding

The majority of the justices conclude that the superintendent's authority over "what goes on within the site

16

itself" is unaffected by local zoning, *ante* at 7, and that local school districts are immune from township zoning ordinances "as they affect the content of the site plan itself." *Ante* at 9. However, the lead opinion does not otherwise explain how broad or how limited it perceives the superintendent's jurisdiction to be. This prompts the obvious questions: precisely what, under the lead opinion, does the superintendent have the authority to do; and precisely what do local officials have the authority to do? By not offering insight into how these questions should be answered, the public is left only to speculate, ensuring that new litigation will be the product. Which types of zoning and land-use matters "affect" the content of the site plan itself?[10] Do sewage and drainage pipes that extend beyond the "site itself" and into the surrounding community "affect" the site plan? Do roads and paths, and means of ingress and egress that extend beyond the "site itself" and into the surrounding community "affect" the site plan? Do environmental regulations that affect the community generally "affect" the site plan? Do noise regulations that have a general effect on the community

---

[10] Some sense of the breadth of the answer to this question might be gleaned by reading the United States Supreme Court's decision in *Wickard v Filburn*, 317 US 111; 63 S Ct 82 87 L Ed 122 (1942), and its considerable line of progeny, concerning what is meant by matters that "affect" interstate commerce.

"affect" the site plan?  Indeed, what generally applicable zoning and land-use regulations might not be perceived, at least under some circumstances, as "affecting" the site plan?[11]

Apart from what "affects" the site plan, and is thereby within the exclusive determination of the superintendent, what "affects" the community surrounding the school is also within the exclusive determination of the superintendent.  Persons living within the surrounding neighborhood, and within the surrounding community, will, as a result, have diminished effective resort to their local representatives, none of whom will any longer possess authority over matters relating to school sites and the structures upon them.

### V.  CONCLUSION

Contrary to the majority, I do not believe that MCL 380.1263(3), which grants the state superintendent "sole and

---

[11] The lead opinion is tentative even in addressing whether a community may determine the initial location of a school, for example, by restricting it from being placed in a recreationally, residentially, or commercially zoned area. The lead opinion, while indicating that school districts are exempt from zoning ordinances that "affect the content of a school site plan," *ante* at 12, does not clearly address the question of who has the power to determine the location of the school site in the first instance, and whether a community has any involvement in this decision.  Although the lead opinion appears at one point to limit the superintendent's exemption to "the site plan itself," *ante* at 9, it proceeds to suggest that the superintendent possesses exclusive authority "over design, construction, and *siting* requirements," *ante* at 9 (emphasis added).  Moreover, it is difficult to understand what could more directly "affect" a school site plan than *where* a school is sited in the first place.

exclusive jurisdiction over the review and approval of plans and specifications for the construction, reconstruction, or remodeling of school buildings . . . and of site plans for those school buildings," indicates a "clear legislative intent" to exempt the state school superintendent from local zoning ordinances. First, the superintendent's authority over "site plans" is not the equivalent of zoning or land-use authority, and such authority cannot reasonably be understood to displace local zoning and land-use authority. Second, subsection 1263(3) does not even refer to zoning. Its specific grants of authority to the superintendent cannot reasonably be construed to include the distinct, and greater, authority over zoning and land-use matters. Third, the relevant provisions of the Township Zoning Act confer upon townships broad land-use authority and specifically recognize the role of such authority in providing for a system of education. Such breadth of authority is inconsistent with the notion that the Legislature would have compromised this authority through statutory silence and indirection.

I would therefore reverse the part of the judgment of the Court of Appeals finding such an exemption for the superintendent's decisions, and remand for entry of summary

19

disposition on this issue in favor of the intervenors.[12]

Stephen J. Markman

---

[12] I concur in part IV of the lead opinion, in which the justices decline to address intervenors' argument regarding the improper delegation of authority.